**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DON RAMEY LOGAN, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No.: |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT FOR COPYRIGHT AND DMCA VIOLATIONS** |
| META PLATFORMS, INC. f/k/a FACEBOOK, INC., | ) ) | |
| Defendant. | ) ) ) | |
| | ) | **JURY TRIAL DEMANDED** |

Plaintiff Don Logan, on behalf of himself and all others similarly situated, for his

complaint against Defendant Meta Platforms, Inc. formerly known as ("f/k/a") Facebook, Inc.

("Facebook" or "FB"), alleges upon personal knowledge as to his own conduct, and on

information and belief based on the investigation of his counsel, as to all other conducted alleged

herein, as follows.

## I.      INTRODUCTION

1.      Facebook, Inc.("FB") is a social media and social networking service company

which can be accessed from devices with internet connectivity.  In 2013, following Twitter's

announcement that Twitter members could "embed" other members' content into their own, FB

announced that it would allow its users to take content from other user's FB pages and transmit

that content without permission or even knowledge of the member on whose pages the content

originally resided.

2.      Generally, "embedding" means the process of copying the unique hypertext

markup language ("HTML") code assigned to each photo or video published to the Internet, and

the insertion of that code into a target webpage or social media post so that photo or video

appears within the target post. Through that same route, the copier could saver the photo or

video to its server. Within the Facebook environment, this means that third parties can copy the HTML code of a Facebook user's post and paste it into the third party's website, causing the photo or video posted to that Facebook user's account to be simultaneously displayed on that third party website and saved to that third party's server.

3.      Plaintiff alleges that when a third party embedded his copyrighted photos from his Facebook account to a third-party's website without a license, permission, or valid legal defense from the copyright owner, nor ever a sub-license from Facebook, this constitutes an infringement of the copyright owner's exclusive display right under the Copyright Act of 1976, 17 U.S.C. §101 *et seq*., and therefore violates the law.

4.      From on or about July 2013 until March 2021, Facebook knew or recklessly disregarded that no third party ever obtained a license or permission from Facebook to embed a copyrighted photo or video. Facebook also knew or recklessly disregarded that no third party ever obtained a license or permission from the copyright owner each time the embed tool was used to display a copyrighted work. Facebook also regularly and systematically handled, controlled, made reference to, and touched valuable copyrighted works with the intent and knowledge that third party online publishers were embedding those works without ever obtaining a license from the copyright owner, which in turn generated more traffic, more clicks, more likes, more shares, and other revenue-generating conduct for Facebook arising as a result of the infringing activity of third parties.

5.      Facebook did not provide any tool, device or meaningful way for Logan or other copyright owners to control or track third party embeds of Facebook posts, thereby depriving copyright owners of the ability to discover alleged infringements. Meanwhile, Facebook retained for itself the ability to track embeds of Facebook user content across the Internet. It

also retained for itself the technological means and ability to track copyrighted works embedded

on third party websites – all the while retaining 100% of the benefit and/or revenue from the

infringing activity of third-party embedders – of which Facebook had actual and/or constructive

knowledge.

6.      From 2013 to 2021, Plaintiff and members of the Class who owned copyrighted

works uploaded their intellectual property in the form of photo and videos to Facebook with the

expectation and trust that Facebook (and its parent Facebook) would honor, protect and respect

their copyrighted works.  Facebook's scheme utilized the embedding tool to convert Plaintiff and

members of the Class's copyrighted works to Facebook's benefit.  Facebook terms of use

implied to Plaintiff and members of the Class that Facebook would not allow unauthorized use of

copyrighted works through its "embed" feature.  The embed feature is the means through which

infringers could download copyrighted works. Instead, Facebook denied copyright owners any

meaningful opportunity or means to discover and prevent public display of their works through

Facebook's embedding that infringed their copyrights.

## II.      PARTIES

7.      Plaintiff Don Logan is a resident of California.  Logan maintains an account on

Facebook.  He is the creator of high-quality photographs and the owner of copyrighted works

that have been unlawfully embedded from his Facebook account page without his permission, a

license or other valid legal defense, and for which Logan has not been compensated.

8.      Defendant Meta Platforms, Inc. f/k/a Facebook, Inc. ("FB" or "Facebook") is a

Delaware company with its principal place of business at 1601 Willow Road, Menlo Park,

California 94025 which regularly conducts business in New York and maintains offices at the

Farley Building and Hudson Yards in Manhattan for its more than 4,000 Manhattan employees.

## III.   JURISDICTION AND VENUE

9.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

10.    This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a State different from that of Defendant Facebook; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs.  Further, 28 U.S.C. 1332(d)(5) does not apply because (i) Defendant is not a State, State official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

12.    This Court has personal jurisdiction over Defendant. Facebook maintains its headquarters in California.  Defendant has also committed and/or facilitated, aided and abetted or contributed to copyright infringement causing injury to Plaintiff and members of the Class from its actions in California. Defendant regularly solicits and does business in California and derives substantial revenue therefrom.

13.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a) because Defendant maintains a significant portion of its operations in this District, and a substantial part of the events and transactions giving rise to the claims alleged herein occurred in this District.

14.    In addition, Facebook's terms of use provide that all claims against it must be litigated in the United States District Court for the Northern District of California.

## IV.     FACTUAL ALLEGATIONS

### A.     The Copyright Act and the Display Right

15.     Copyrights are the legal title to intellectual property by which creators of original content such as photos and videos protect their moral and economic rights in that content.

16.     The 1976 Copyright Act makes it illegal to publicly perform, publicly display, distribute, or reproduce a copyrighted work except in limited instances, and provides for statutory damages, willful statutory damages, and the right to recover attorneys' fees. 17 U.S.C. §§501 et seq. In 1976, the Copyright Act was amended to give content creators such as photographers and videographers an automatic copyright in their photos and videos.

17.     Section 106 of the Copyright Act (the "Act") grants copyright owners the exclusive public display right and right to control the commercial use or exploitation of their work or portions thereof.

18.     The legislative history of the display right under the Act confirms that the statute was intended to reach conduct like the use of embedding regardless of the physical location of where the copy of the file of a photo or video has been displayed.

### B.     Embedding at Facebook

19.     Facebook describes itself as a company which "enables people to connect, share, discover and communicate with each other on mobile devices and personal computers.  There are a number of different ways to engage with people on Facebook and build community including Facebook Newsfeed, Stories, Groups, shops, News and Watch."

20.     During the Class Period, Facebook offered a service called "Facebook API" ("API") which is an HTTP-based API that apps can use to programmatically query data, post new stories, manage acts, upload photos, and perform a wide variety of other tasks.  API can be used directly in the user's browser.  By merely opening a Facebook account, potential copyright

infringers can be enabled to access and share content posted by other users (*i.e.* Logan and other class members) upon whose Facebook account proprietary work resides.

21.   As alleged, "embedding" is a technical process by which a copyrighted work can be made visible and displayed without the copyrighted work being saved on the server of the third-party website. In general, a webpage is a made up a series of instructions usually written in Hypertext Markup Language ("HTML"). The HTML code allows for the arrangement of text and/or images and/videos on a page and can also include photographs or videos to be available to be displayed.  When including a photograph or video on a webpage, the HTML code instructs the browser how and where to place the photograph(s) or video(s). Put another way, "embedding" a photograph or video on a webpage is the act of a technical web coder adding a specific "embed" code to the HTML instructions that incorporates a photograph or video, hosted in this case on Facebook's server, to be displayed on a third-party webpage that the third-party controls with regard to the other text, photos or videos around the embedded work. To embed a photo or video, the coder or web designer adds an "embed" code to the HTML instructions from a public Facebook account. This code directs the browser to the Facebook server to retrieve the photo or video. An embedded photo or video will then hyperlink to the third-party webpage for display without the Facebook account owner-copyright owner having granted any authorization.

22.   Beginning in 2013, Facebook allowed, induced, encouraged and facilitated third party embedders who had Facebook accounts to display copyrighted works without permission from the copyright holders or from Facebook.

23.   Embedding allows a website coder to incorporate content, such as an image, that is located on a third party's server, into the coder's website.  When an individual visits a website that includes an "embed code" the user's internet browner is directed to retrieve the embedded

content from the third-party server and display it on the website.  As a result the user sees the embedded content on the website, even though the content is actually hosted on a third party's server, rather than on the server that hosts the website.

24.     The integration of links, images, video, gifs and other content into social media posts or other web media enabled by embedding.  Such integration is the key to Facebook's goal: ever-increasing velocity of user engagement for longer periods of time.  Embedding external content is a way to increase engagement with social media posts.  A study by Social Media Examiner showed that images on posts, sites, stories increase interaction rates to 87% on Facebook posts and 35% on Twitter.

25.     Facebook automatically converts most external links included in posts to an embedded format.  Embedding constitutes a "display" that is capable of infringing a copyright in the image.

26.     Users use Facebook API to embed proprietary works of others into the infringers' websites without seeking permission or license from the creator nor even notice to the creator about the embedding.

27.     Plaintiff has granted no copyright license or sublicense to Facebook nor any embedders.

28.     Facebook has told its users "Embedded Posts let you add any public post from Facebook to your blog or website."  Facebook provides the manner and means to embed a public post through the "Activity Feed."

29.     The embed tool was built by Facebook to create a "frictionless" system that made it quick, easy and cheap to take copyrighted works and embed them into a third-party website without the copyright owner ever being given notice of such embed. Likewise, a viewer of the

webpage where the copyrighted work is "embedded" likely does not even know that the photo or video displayed in the body of the webpage has been "embedded" into the page with the actual photo or video's file being stored and saved on Facebook's server.

30.     To a viewer of the webpage, content embedded from a Facebook user's public account appears no differently than other content within the page, be it an advertisement, clickable link, or the third-party website's original and/or owned or licensed content. A viewer of that website does not even need to be a Facebook user or have a Facebook account to view Facebook photos or videos embedded within any third-party webpage.

31.     Plaintiff alleges that embedding from a social media platform to a third-party website of a copyrighted work without permission or a license or valid legal defense infringes on the display right set forth in the Copyright Act.

32.     As alleged below, Facebook is liable for the conduct of third-party embedders who used the embed tool (HTML code) as a "device or process" to cause copyrighted works to be displayed (and/or playable in the case of videos) on each third-party website and, therefore, Facebook contributed to causing the "display" of copyrighted works for purposes of the Act without those third-party embedders ever having actual possession of the copyrighted works.

### C.     Logan's Copyrighted Works Have Been Illegally Embedded

33.     Plaintiff has registered certain embedded photos with the United States Copyright Office within three months of any "publication" with registration numbers . . .

34.     Logan's copyright rights under the Copyright Act include the exclusive right to "transmit or otherwise communicate . . . a display of the work . . . to the public, by means of any device or process. . ."

35.     More than 2 billion people use Facebook every month.

36.     Facebook has admitted publicly that it has not granted users of its web embed API a license to display embedded content on other websites.

37.     This statement finally revealed the falsity of Facebook's marketing promotions in 2014 that websites were free to embed third party posts as long as the content had been set to "public."

38.     As a result of FB's actions, Logan's copyrighted works some of which are reproduced below were unlawfully "embedded" by third party users without Logan's implicit or explicit permission, authorization or knowledge:

(a)     https://www.facebook.com/search/top/?q=Newport%20Beach&epa=SEARCH_BOX (removed)



(b)      https://www.facebook.com/search/top/?q=liberty%20island&epa=SEARCH_BOX (removed)



(c)      https://www.facebook.com/search/top/?q=Fort%20Pierce%20Inlet%20&epa=SEARCH_BOX (removed)



(d)    https://www.facebook.com/search/top/?q=Dana%20point&epa=SEARCH_BOX (removed)



(e)    https://www.facebook.com/search/top/?q=san%20clemente%20california&epa=SEARCH_BOX



39.     As a result of Facebook's embed practices, Logan's rights in his work have been violated.

40.     Plaintiff and the members of the Class have been subject to Facebook's action since 2013 when Facebook created a platform tool to embed copyrighted works without the necessary means for copyright holders to enforce their copyrights, all while Facebook was actively engaged in direct handling of copyrighted works for third parties to use. Plaintiff did not grant any license to Facebook which allowed Facebook to "give" or sub-license Logan's or any class members' copyrighted work.

41.     Plaintiff and the members of the Class never intended or agreed that users of Facebook's embed technology would receive an automatic sublicense from Facebook.

42.     Facebook does not have a copyright management tool or other mechanism for Facebook users that own copyrights, to allow such copyright owners to track which third parties embed their photos and videos. Users such as Plaintiff and the Class members have no viable means to track the rampant copyright infringement that the Facebook platform enables through embeds. Accordingly, Plaintiff and other Class Members will require an accounting of "embedded" activity.

43.     Facebook is the beneficiary and ersatz custodian of millions of copyrighted photos and videos uploaded by its users. Defendant reaps billions of dollars annually from hosting, tracking, encouraging, handling, and causing a significant number of such photos and videos, which include hundreds of thousands or even millions of registered copyrighted works, to be embedded and therefore infringed by third parties who used the embed tool.

44.     Facebook knew of the infringements or was reckless in its disregard of its users' rights and permitted and facilitated infringements of third-party embedders because no third-

party embedder ever obtained a license or permission from the copyright owner or from Facebook. While Facebook informed Plaintiff and the members of the Class that their photos and videos belonged to them and agreed to not sell or monetize those works, Facebook directly benefitted from the infringing activity that it induced or contributed to by handling such content on a regular and systematic basis. In other words, each year since 2013 Facebook handled and elevated copyrighted content by causing third party website publisher embedders to display that content, which in turn drove traffic and other monetizable activities back to Facebook's platform.

45.     Facebook is estimated to control 23% of the online advertising market. Much of that ad revenue is built on data Facebook gathers from Facebook users drawn to Facebook by infringing material, with the Facebook and Facebook platforms being integrated in various ways such as cross-platform messaging linked user profiles, and other behind-the-scenes ways not visible to the public.

46.     Notably, Facebook, also went on the record in a hearing in the United States District Court for the Southern District of New York before Magistrate Judge Barbara Moses, declaring through its counsel that "Facebook is free to, under its policies…..to grant such sublicenses, but they did not do that. And they did not do that for anybody and the anybody would, of course, then  include [Defendant] Mashable in this situation." *Sinclair v. Mashable, Inc.*, No. 18-cv-790, Tr. of Proceedings, at 8:24-9:4 (Dec. 1. 2020).

47.     FB's admission in open court by its counsel that it did not grant sublicenses to "anybody" means FB did not grant a sublicense to anyone for Logan's photos.  FB is therefore liable for inducing and permitting such copyright infringements to occur as a result of the use of Facebook's "embed" tool.

48.     Facebook is the proximate cause of the infringing conduct herein alleged because it knew about the infringements of all embedders, and directly benefited from the infringing content. In other words, the embed tool was built and offered by Facebook as a means of creating an "end-around" to the protections of the Copyright Act and eviscerating a copyright holders' display, performance and distribution rights, all the while withholding tools that would help copyright holders locate and discover violations of those rights.

## V.     STATUTE OF LIMITATIONS

49.     Throughout the time relevant to this action, Facebook affirmatively suppressed, concealed, and omitted from Plaintiff and Class members its acts and omissions violating Plaintiff and Class members' rights since at least July 1, 2013, when the embed tool was introduced.  Defendant willfully and knowingly kept Plaintiff ignorant of vital information essential to their rights and violations thereof essential to pursue the claims herein alleged. As a result, Plaintiff could not have discovered the violation of rights, even upon exercise of reasonable due diligence until, at the earliest, December 2020 when Facebook, through Facebook, admitted in open court the truth regarding embedding.

## VI.     CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4) on behalf of the following class:

> All individual persons or entities who, from July 1, 2013 to the present ("Class Period"), owning the exclusive right to publicly perform, reproduce, publicly display, or distribute film, audiovisual, or photographs and/or videos over the Internet for any work first going into the public domain after December 31, 1977 and whose registered copyrighted work(s) have been uploaded to Facebook, where such copyrighted owner has had their copyrighted work embedded and caused to be displayed via Facebook's embedding tool on a third party website without the copyright owner's consent, permission or a license.

Excluded from the class are: (a) Facebook; (b) the subsidiaries and affiliates of Facebook; (c) any person or entity who is a partner, officer, director, employee, or controlling person of Facebook; (d) any entity in which Facebook have a controlling interest; (e) any rights holder as to whom Facebook have directly granted express permission for a license to a third party embedder for acts of infringement occurring after such license began; and (f) the legal representatives, heirs, successors, and assigns of any excluded party. Plaintiff reserves the right to amend the Class definition if further investigation and/or discovery reveal that the Class should be expanded, divided into subclasses, or otherwise modified. Pursuant to Federal Rules of Civil Procedure 23(a)(1), the members of the Class are so numerous that joinder of all members is impracticable. The exact number of Plaintiff class members is presently unknown but is reasonably ascertainable applying objective criteria. The number of Class members is anticipated to be potentially many thousands based on the number of embeds on the Facebook platform.

51.     Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), there are questions of law or fact common to the Class members. The Class members uploaded and distributed their copyrighted photos and/or videos to Facebook with the objective expectation that third-party embedders would obtain permission, consent or a license to use or display such copyrighted work(s). The claims of the Plaintiff and the members of the Class arise from the uniform method by which Facebook induced copyright infringement by making available copyrighted works to embedders without requiring them to acquire a license or permission, and therefore properly compensate, copyright holders. The claims of Plaintiff and the Class members arise from a common federal statute and legal theory and a common nucleus of

operative facts is applicable to the claims of each Class member. This liability question may be decided by one Court. The common questions of law and fact include, but are not limited to:

      a.     Whether Defendant's conduct as alleged constitutes an infringement of the copyrights held by Plaintiff and the Class in their respective works.

      b.     Whether Defendant's conduct as alleged constitutes contributory copyright infringement of the copyrights held by Plaintiff and the members of the Class.

      c.     Whether Defendant's conduct as alleged constitutes inducement of copyright infringement of the copyrights held by Plaintiff and the members of the Class.

      d.     Whether Defendant's conduct as alleged constitutes vicarious infringement of the copyrights held by Plaintiff and the members of the Class.

      e.     Whether Defendant acted willfully with respect to the copyright infringements alleged.

      f.     Whether Defendant has deliberately avoided taking reasonable precautions to deter copyright infringement from the embed tool.

      g.     Whether Defendant has reasonably implemented a policy and procedure to prevent infringements of the copyrights held by Plaintiff and the members of the Class on Facebook via the API embed tool.

      h.     Whether Plaintiff and the members of the Class have sustained injury and, if so, what is the proper measure of relief.

      52.     Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiff's claims are typical of the claims of the other members of the Class since Plaintiff and all members of the Class were deprived of the statutory compensation for the use of their copyrighted works.

53.     Pursuant to Federal Rule of Civil Procedure 23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has no interests adverse or antagonistic to those of the Class and have retained counsel experienced in federal copyright law matters and class action lawsuits.

54.     Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since the injury suffered by individual Class members may be relatively small, and the expense and burden of individual litigation would therefore make it impossible and/or impracticable for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

55.     Certification of Plaintiff's claims for class action treatment is also appropriate pursuant to Federal Rules of Civil Procedure 23(b)(2) because Facebook has acted or refused to act on grounds generally applicable to Plaintiff and the members of the Class in failing and refusing to compensate Plaintiff and Class members for the unlawful use and reproduction of their copyrighted works, and failing or refusing to modify its platform which permits rampant embedding by third parties of copyrighted material, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class. Facebook's records reflect the identities of the Class members whose copyrighted materials have been posted on their platforms without compensation according to law. As a result, Plaintiff seek to represent an ascertainable Class, in that determining membership in the Class can be accomplished through access to Facebook's own records.

## FIRST CAUSE OF ACTION

### Copyright Infringement – 17 U.S.C. §§ 106, et seq.

56.     Logan re-alleges the allegations in Paragraphs 1 through __.

57.     Logan is the sole creator, author and sole owner of the copyright in the Photo.

58.     The United States Copyright Law, (17 USC §§ 106 and 501), grants exclusive rights to the copyright owner of an image for use of that image, including the rights to:

- reproduce the copyrighted work;
- prepare derivative works based on the copyrighted work;
- distribute copies of the copyrighted work to the public; and/or
- display the image.

59.     When those rights are infringed, the copyright owner is entitled to recover damages suffered as a result of the infringement, regardless of whether the infringer(s) acted knowingly or intentionally. See 17 USC § 501 et seq.

60.     Copyright infringement under the statute is a strict liability offense.

61.     The statute entitles the copyright owner to elect either to receive the actual damages caused by, and the profits earned from, the infringement or statutory damages of up to $150,000 for willful infringement for each copyrighted work. See 17 USC §504(b) and (c).  The election can be made at any time up to the time of trial.

62.     No part of Don Logan Photography has ever entered the public domain.

63.     "Willfulness" has a particular meaning under copyright law.

> "[W]illfulness" means that the infringer either had actual knowledge that it was infringing the owner's copyrights or acted in reckless disregard of those rights. *Brown v. McCormick*, 87 F.Supp.2d 467, 482 (D.Md.2000). Evidence that the infringed works bore prominent copyright notices supports . . . a finding of willfulness. *See Castle Rock Entm't v. Carol Publ'g Group*, *Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997).

[*Lowry's Reports, Inc. v. Legg Mason Inc., et al*., 271 F.Supp.2d 737 (D. Md., July 10, 2003)].

64.     Upon information and belief, Defendants have unlawfully appropriated and/or used produced, reproduced, distributed, and publicly displayed the Photo without Logan's consent.  Defendants' acts violate Logan's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Logan's exclusive rights to produce, reproduce, and distribute copies of his work, to create derivative works, and to publicly display his work.

65.     Logan never granted anyone the right to create any derivative work of Don Logan Photography.

66.     Defendants' infringement has been undertaken knowingly, and with intent to obtain financial gain from Logan's work.  Defendants have failed to exercise their right, ability and duty to supervise persons within their control to prevent infringement and they did so with intent to further their financial interests in the infringement of the Photo and/or other works in Don Logan Photography.  Each Defendant has failed to prevent all or any other Defendant from infringing on Logan's copyrighted work and therefore each Defendant is vicariously or contrabilarily liable for each other Defendants' direct judgment.  Accordingly, Defendants have directly, contributorily, and vicariously infringed Logan's copyrighted works.

67.     Because of Defendants' direct and/or indirect infringing acts, Logan is entitled to his actual damages and Defendant's profits attributable in an amount to be proved at trial and/or statutory damages and all other relief allowed under the Copyright Act.

68.     Defendants' infringements have caused and is causing irreparable harm to Logan, for which he has no adequate remedy at law.  Unless this Court restrains Defendants from infringing Logan's protected work, the harm will continue to occur in the future.  Accordingly, Logan is entitled to a preliminary and permanent injunction.

## SECOND CAUSE OF ACTION

### (Inducement of Copyright Infringement)

69.     Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

70.     Facebook's embed users have infringed and are infringing Plaintiff' and the Class members' rights in their registered copyrighted photos and video and audiovisual works by, *inter alia*, embedding infringing copies of Plaintiff' and the Class members' copyrighted works onto and from Facebook's platform and publicly performing, displaying, distributing, and reproducing, or purporting to authorize the public performance, display, distribution, or reproduction of such copyrighted works or infringing videos, all without authorization from Facebook or Plaintiff and the members of the Class.

71.     Facebook's embed users are therefore directly infringing Plaintiff' and the Class members' exclusive rights of reproduction, distribution, public performance, and public display under U.S.C. §§ 106(1), (3), (4), and (5).

72.     Defendant is liable under the Copyright Act for inducing the infringing acts of Facebook's embed users. Defendant exercises control over and/or influences which photos and videos it embeds users embedded and which infringing material gets removed or does not get removed from its platforms.

73.     Defendant operates with the objective of promoting its use to infringe Plaintiff' and the Class members' copyrights and is unlawfully fostering copyright infringement by Facebook embed users.

74.     Defendant knew or recklessly disregarded that Plaintiff and the Class members' photos and audiovisual works are copyrighted and authorized for purchase through various

outlets, including numerous lawfully authorized online digital download services, or for licensing from the Class members or their agents.

75.     Defendant is also aware that it embeds users are employing Facebook to unlawfully reproduce, distribute, publicly perform, and publicly display Plaintiff' and the Class members' copyrighted works. Defendant intends for, encourages, and induces Facebook embed users to employ Facebook in this regard.

76.     Defendant's acts of inducing copyright infringements have been willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff and the Class.

77.     As a direct and proximate result of Defendant's inducement of infringements of Plaintiff and the Class members' exclusive copyrights, Plaintiff and the Class members have been damaged.

78.     Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff and the Class members great and irreparable injury that cannot fully be compensated.

79.     Pursuant to 17 U.S.C. § 502, Plaintiff and the Class members are entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff' and the Class members' copyrights.

### THIRD CAUSE OF ACTION

**Under Digital Millennial Copyright Act ("DMCA")**
**(17 U.S.C. § 17 U.S.C. 1201-1205)**

80.     Plaintiff repeats and realleges each and every allegation of this Complaint as if more fully set forth at length herein.

81.   Section 1202 of the DMCA prohibits intentional removal or alternation of "Copyright Management Information" ("CMI") conveyed "in connection with copyrighted works."

82.   CMI is defined by Section 1202(c) to include:

(a)   Title or other information identifying the work including information set forth on a notice of copyright;

(b)   Names and other identifying information about the owners and author of works;

(c)   Terms and conditions for use  or the work;

(d)   Identifying members or symbols referring to such information or links to such information.

83.   The elements of a claim under 1202(b) are:  existence of CMI on the infringed work; removal or alteration of that information; the removal or alteration was done intentionally.

84.   The Photo contained CMI.

85.   Defendants intentionally removed and/or altered the CMI in the Photo.

86.   As a result of the foregoing, Plaintiff has been damaged.

87.   Defendants' removal of the Photo's CMI has facilitated further infringement and/or induced, enabled, or concealed actual infringement.

88.   Section 1203(c)(5) shifts the burden of proving "innocent" violation on Defendants.

89.   By removing the Photo's CMI, Defendants have destroyed the commercial value of Logan's photo by relegating the Photo to the status of "orphan work."

90.     Plaintiff is therefore entitled to $25,000 in statutory damages for each violation, *i.e.* each time each Defendant used the Photo or benefitted from use in an infringing manner on a different platform, website, media, or manner of distribution.

## FOURTH CAUSE OF ACTION

### (Contributory Copyright Infringement)

91.     Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

92.     Facebook's embed users have infringed and are infringing Plaintiff and the Class members' rights in their registered copyrighted photos, and audiovisual works by, *inter alia*, embedding infringing copies of Plaintiff and the Class members' copyrighted works onto and from Facebook's platform and publicly performing, displaying, distributing, and reproducing, or purporting to authorize the public performance, display, distribution, or reproduction of such copyrighted works or infringing videos, all without authorization. Facebook's embed users are therefore directly infringing Plaintiff and the Class members' exclusive rights of reproduction, distribution, public performance, and public display under U.S.C. §§ 106(1), (3), (4), and (5).

93.     Defendant is liable as a contributory copyright infringer for the infringing acts of Facebook embed users. Defendant enables, induces, facilitates, and materially contributes to each act of infringement by Facebook embed users.

94.     Defendant has actual and constructive knowledge that it embeds users are using its platform to copy, distribute, publicly perform, and publicly display Plaintiff' and the Class members' copyrighted works. Acting with actual and constructive knowledge, Defendant enables, facilitates, and materially contributes to Facebook embed users' copyright infringement, which could not occur without Defendant's enablement.

95.     Defendant's acts of contributing to direct infringement of the embed users have been willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff and the Class.

96.     As a direct and proximate result of Defendant's contributory infringement of Plaintiff and the Class members' exclusive copyrights, Plaintiff and the Class have been damaged.

97.     Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff and the Class great and irreparable injury that cannot fully be compensated.

98.     Pursuant to 17 U.S.C. § 502, Plaintiff and the Class are entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff' and the Class members' copyrights.

## FIFTH CAUSE OF ACTION

### (Vicarious Copyright Infringement)

99.     Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

100.    Facebook's embed users have infringed and are infringing Plaintiff and the Class members' rights in their registered copyrighted photos, and audiovisual works by, *inter alia*, embedding Plaintiff and the Class members' copyrighted works onto and from Facebook's platform and are publicly performing, displaying, distributing, and reproducing, or purporting to authorize the public performance, display, distribution, or reproduction of such copyrighted works or infringing videos, all without authorization. Facebook's embed users are therefore directly infringing Plaintiff and the Class members' exclusive rights of reproduction, distribution, public performance, and public display under U.S.C. §§ 106(1), (3), (4), and (5).

101.     Defendant is vicariously liable for the infringing acts of Facebook's embed users.

102.     Defendant has both the right and the ability to supervise, monitor, track and enforce Facebook's embed users' infringing conduct and to prevent Facebook's embed users from infringing Plaintiff and the Class members' copyrighted works.

103.     Facebook significantly and directly benefits from widespread infringement by it embed users. The availability of a vast collection of valuable, quality copyrighted works on Facebook acts as a substantial draw, attracting embed users to the platform. The more works that are embedded by third-party embedders, the more user traffic and amount of time Facebook users spend there when they visit the platforms and the traffic sent back into the Facebook platform.

104.     Defendant derives substantial advertising revenue tied directly to the volume of traffic it is able to attract to Facebook.

105.     Defendant's third-party embedder infringements have been willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff and the Class.

106.     As a direct and proximate result of Defendant's third-party embedder infringements of Plaintiff and the Class members' exclusive copyrights, Plaintiff and the Class have been damaged.

107.     Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff and the Class great and irreparable injury that cannot fully be compensated.

108.     Pursuant to 17 U.S.C. § 502, Plaintiff and the Class are entitled to a permanent injunction requiring Defendant to employ reasonable methodologies to prevent or limit infringement of Plaintiff' and the Class members' copyrights.

## VII.    RELIEF REQUESTED

109.    Wherefore, Plaintiff, on behalf of themselves and the members of the Class, pray for judgment against Defendant as follows:

a.    Determining that this action may be maintained and certified as a class action pursuant to Federal Rule of Civil Procedure 23 and certifying Plaintiff as the representative and his undersigned counsel as counsel for the Class.

b.    Awarding Plaintiff and the Class damages derived from the infringing acts, and/or statutory damages, in the amount permitted by law with respect to each work infringed, including statutory damages for willful and/or reckless misconduct.

c.    Granting Plaintiff and the Class injunctive and other equitable relief enjoining Defendant, its officers, agents, servants, and employees, and all those acting in concert with the aforementioned parties:

i.    From directly or indirectly reproducing, publicly performing, publicly displaying, or distributing the copyrighted works to which Plaintiff and the Class have exclusive rights.

ii.    From causing, contributing to, inducing, enabling, facilitating, or participating in the infringement of any of the copyrighted works which are the property of the Plaintiff and the Class members.

d.    To affirmatively adopt, implement, and offer to all person's tools and all other measures available, including tracking code, and those measures that shall become available in the future, to identify and protect copyrighted content embedded without consent and prevent it from being embedded or otherwise made available through the facilities owned, operated, or controlled by Defendant.

e.      Disgorging all profits derived by Defendant that were illegally obtained as a result of the conduct alleged herein.

f.      Awarding prejudgment interest to the maximum extent permitted by law.

g.      Awarding Plaintiff' attorneys' fees, costs, and expenses in this action.

h.      Awarding such other and further relief as the Court may deem just and proper.

## VIII.   JURY TRIAL DEMANDED

110.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: February 16, 2022                    Respectfully submitted:

**SQUITIERI & FEARON, LLP**


By:/s/*Lee Squitieri*_____
        Lee Squitieri
305 Broadway
7th Floor
New York, New York 10007
Telephone:  (212) 421-6492
Facsimile:  (212) 421-6553
Email: lee@sfclasslaw.com

MARIO A. ISKANDER (SBN 327025)
**THE LAW OFFICES OF MARIO A. ISKANDER**
1245 N Patt Street
Anaheim, California 92801-2550
Telephone:  (240) 439-1970
Email: marioeskander@hotmail.com