DURIE TANGRI LLP
RAGESH K. TANGRI (SBN 159477)
rtangri@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
ANNIE A. LEE (SBN 328802)
alee@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

DURIE TANGRI LLP
ALLYSON R. BENNETT (SBN 302090)
abennett@durietangri.com
953 East 3rd Street
Los Angeles, CA 90013
Telephone:    213-992-4499
Facsimile:    415-236-6300

Attorneys for Defendant
META PLATFORMS, INC. f/k/a
FACEBOOK, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DON RAMEY LOGAN, et al.,<br><br>                             Plaintiffs,<br><br>        v.<br><br>META PLATFORMS, INC. f/k/a FACEBOOK, INC.,<br><br>                             Defendant. | Case No. 4:22-CV-01847-CRB<br><br>**DEFENDANT META'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR COPYRIGHT AND DMCA VIOLATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    October 7, 2022<br>Time:    10:00 a.m.<br>Ctrm:    6, 17th Floor<br>Judge:  Honorable Charles R. Breyer |

# **TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

    A.  Plaintiff's public Facebook posts and Facebook's embed tool............................2

    B.  How embedding works ........................................................................................3

        1.  A user's browser retrieves HTML from a remote server and processes that HTML to generate the webpage on the user's screen. ...............................3

        2.  When content is embedded (including content embedded from Facebook), the HTML causes the user's browser to retrieve files from other servers, not the website's own servers. ...............................4

III.  LEGAL STANDARD.............................................................................................5

IV.  ARGUMENT .........................................................................................................6

    A.  Plaintiff Has Not Pled Indirect Infringement.....................................................6

        1.  Plaintiff must plausibly allege that third-party websites directly infringed by embedding the copyrighted content. ....................................6

        2.  Plaintiff's allegations of embedding do not constitute direct infringement under the Ninth Circuit's "Server Test"...............................7

        3.  Leave to amend would be futile for Plaintiff's secondary copyright liability claims. ................................................................................10

    B.  Plaintiff Has Not Pled Direct Infringement .....................................................10

    C.  Authorship Does Not Give Rise to a False Advertising Claim Under the Lanham Act........................................................................................................13

    D.  Plaintiff Has Not Pled Removal or Alteration of Copyright Management Information ........................................................................................................14

V.  CONCLUSION....................................................................................................16

i

NOTICE OF AND MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF /
CASE NO. 4:22-CV-01847-CRB

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Broad. Cos. v. Aereo, Inc.*,
573 U.S. 431 (2014) (Scalia, J., dissenting)..................................................................6

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
465 F.3d 946 (9th Cir. 2006) ........................................................................................5

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*,
467 F. Supp. 2d 394 (S.D.N.Y. 2006)..........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................5

*Bauer v. Tacey Goss, P.S.*,
No. C 12-00876 JSW, 2012 WL 2838834 (N.D. Cal. July 10, 2012) ...................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................................5

*Classic Media, Inc. v. Mewborn*,
532 F.3d 978 (9th Cir. 2008) .......................................................................................13

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) .......................................................................................12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003).................................................................................................13, 14

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. Jun. 18, 2019)...........................................................15

*Hunley v. Instagram, LLC*,
No. 3:21-cv-03778-CRB (filed May 19, 2021) ....................................................*passim*

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)....................................................................................................12

*Miller v. Facebook, Inc.*,
No. C 10-00264 WHA, 2010 WL 1292708 (N.D. Cal. Mar. 31, 2010) ...............................11

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
No. 16-cv-00253-WHO, 2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) ..............................9

*Oppenheimer v. Allvoices, Inc.*,
No. C 14-00499 LB, 2014 WL 2604033 (N.D. Cal. June 10, 2014)...................................14

ii

*Perfect 10, Inc v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .................................................................................7, 8, 12

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ....................................................................................6, 10, 12

*Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*,
  No. 12-cv-04070-JST, 2013 WL 3462078 (N.D. Cal. July 8, 2013).....................................11

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ...............................................................................................5

*Sweaney v. Ada Cnty.*,
  119 F.3d 1385 (9th Cir. 1997) .............................................................................................10

*Sybersound Recs., Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .............................................................................................14

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................................2

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ...........................................................................................6, 10

**Statutes**

15 U.S.C. § 1125(a) ..................................................................................................................13

17 U.S.C. § 411(a) ...................................................................................................................13

17 U.S.C. § 1202...............................................................................................................14, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 11

Fed. R. Civ. P. 15(a) .................................................................................................................5

NOTICE OF AND MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF /
CASE NO. 4:22-CV-01847-CRB

## NOTICE OF META'S MOTION TO DISMISS

Please take notice that at 10:00am on October 7, 2022, in Courtroom 6 on the 17th floor of the above Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. ("Meta"), by and through its attorneys of record, will and hereby does move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the First Amended Complaint for Copyright and DMCA Violations ("Amended Complaint") for failure to state a claim upon which relief can be granted.  This motion is based on the pleadings and papers on file in this action, the following memorandum of points and authorities, and any further papers, evidence or argument as may be submitted in connection with this motion.

Meta respectfully requests the Court to grant this motion and enter the attached proposed order.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff's allegations in this case center on the same embedding process as the embedding process accused in related case *Hunley v. Instagram, LLC*, No. 3:21-cv-03778-CRB (filed May 19, 2021) ("*Hunley*").  Although Plaintiff's Amended Complaint is often confusing and lacking in necessary details in many respects, many of the allegations, including the allegations describing how the embedding process works, are identical to those in *Hunley*.  Thus, for the same reasons this Court dismissed *Hunley*, this Court should also dismiss Plaintiff's claims for secondary copyright liability here under the Ninth Circuit's server test.  The primary difference between the Amended Complaint herein and that in *Hunley* is that Plaintiff Logan takes a scattershot approach.  In addition to the claims of secondary copyright liability, Logan's Amended Complaint here includes a confused mixture of vague and conclusory claims of direct copyright infringement, false advertising, and violation of section 1202 of the DMCA for removing or altering copyright management information ("CMI").

The problem for Plaintiff is that each of these additional claims fails to meet the applicable pleading standards.  *First*, Plaintiff's direct infringement claim is so vague that it is impossible for Meta to ascertain what specific display or distribution of the asserted works Plaintiff alleges as the basis of the claim.  And under any reasonable interpretation of the embedding allegations, Plaintiff *cannot* allege a claim of direct infringement, since Plaintiff alleges that Meta had a license.  *Second*, Plaintiff's Lanham

Act claim fails as a matter of law because it alleges misrepresentation of authorship, not misrepresentation of the nature, characteristics, qualities, or geographic origin of a good, as is required to bring a false advertising claim under the statute.  To the contrary, the Amended Complaint affirmatively alleges that Facebook's embedding tool causes the embedded photo to be simultaneously displayed on the embedder's website; that is, **without** changes to the nature, characteristics, quality or geographic origin of the original work.  **Third**, in Logan's section 1202 claim for removal of CMI, he asserts in conclusory fashion that each of the legal elements of the statutory claim is met, without identifying any CMI in the photo, or how Meta allegedly removed or altered such information.  Instead, Plaintiff asserts photographs that on their face do not contain any CMI, and his Amended Complaint affirmatively alleges that Meta does not remove or alter, but actually **maintains**, Logan's name and file name in an accused work.

In short, Plaintiff has not stated and cannot state any plausible claim for relief.  The Amended Complaint should be dismissed in its entirety with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's public Facebook posts and Facebook's embed tool

To open an account and upload photos or videos to Facebook[1], a user must agree to Meta's Terms of Use.  First Amended Complaint ("Am. Compl.") ¶ 28, ECF No. 18.  By agreeing to those terms, each user grants Meta a nonexclusive license to publicly reproduce and display the content the user uploads to Facebook.  *Id.*; *see also* Declaration of Annie A. Lee submitted herewith ("Lee Decl."), Ex. 1 at pdf p. 5 ("[W]hen you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings)."[2]

---

[1] Although Plaintiff refers to Defendant as "Facebook" throughout the Amended Complaint, Defendant will refer to itself as "Meta" throughout this Brief, and only the Facebook platform itself as "Facebook."

[2] Meta's Terms of Use are incorporated by reference and may be considered part of the Amended Complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Like Instagram (the defendant in *Hunley*), since 2013, Facebook has offered an "embed" feature that gives users and third parties a technological tool to easily make Facebook posts appear on another webpage. Am. Compl. ¶¶ 32-33, 35-38, 40-42. Only public posts can be embedded; private posts cannot. *See id.* ¶ 33.

Plaintiff Logan is a Facebook account holder who asserts that Meta has infringed his copyright in several photographs which have been "unlawfully embedded from his 3rd party hosts and his Facebook account page . . . ." *Id.* ¶ 4.

### B.      How embedding works

As explained in *Hunley*, the embedding process is a method of hyperlinking a user's browser to a server connected to the Internet. *See* Order Granting Mot. to Dismiss at 3-6, *Hunley*, ECF No. 27. Web pages are viewed using a browser, and the user's browser is responsible for loading and displaying the elements of a given web page. "Embedding" is fundamentally a method of pointing a user's browser to an address where particular content may be found. Because embedding is the technical feature at the heart of Plaintiff's claims, how embedding works is discussed below.

### 1.      A user's browser retrieves HTML from a remote server and processes that HTML to generate the webpage on the user's screen.

At its core, the web acts as a global file system where users can retrieve content stored on remote servers anywhere in the world. A server is essentially a computer connected to the Internet. Upon request from a user to a specific server, the server transmits the requested information back to the user. *See* Am. Compl. ¶ 33. Specifically, when a web page is loaded, a file written in HyperText Markup Language (HTML) is transmitted to the user. That HTML file contains (1) an identification of the content of the requested webpage (including instructions as to where necessary photos can be found) and (2) specifications for how the content should be laid out. *Id.* Thus, when a user clicks a link for a certain webpage, the user's computer requests the webpage, and servers respond by transmitting an HTML file for that webpage.

The HTML file acts as a recipe for the webpage requested, describing what ingredients are needed, where they may be found, and how they should be combined in order to show the webpage on the user's screen. *See id.* When a user's computer retrieves an HTML file from a server, a browser,

1   running on the user's computer, makes the recipe according to the instructions in the file and generates

2   the webpage for the user to view.  *See id.*

3           **2.   When content is embedded (including content embedded from Facebook), the
                    HTML causes the user's browser to retrieve files from other servers, not the
4                   website's own servers.**

5           The HTML file may instruct the webpage to incorporate photos that must be fetched separately

6   from the text, whether from another server controlled by the same company, or from a different

7   company's server.  Thus, sometimes, the photos are retrieved from the website's own servers.  But other

8   times, elements of a webpage are sourced from servers not owned by the website itself.  *See.* Am. Compl.

9   ¶ 33.  The latter is what happens with embedding.  As the Amended Complaint alleges:

10              The HTML code allows for the arrangement of text and/or images
                and/or videos on a page and can also include photographs or videos to be
11              available to be displayed.  When including a photograph or video on a
                webpage, the HTML code instructs the browser how and where to place the
12              photograph(s) or video(s).  Put another way, "embedding" a photograph or
                video on a webpage is the act of a technical web coder adding a specific
13              "embed" code to the HTML instructions that incorporates a photograph or
                video, ***hosted in this case on Facebook's server***, to be displayed on a
14              third-party webpage that the third-party controls with regard to the other
                text, photos or videos around the embedded work.  To embed a photo or
15              video, the coder or web designer adds an "embed" code to the HTML
                instructions from a public Facebook account.  This code ***directs the***
16              ***browser to the Facebook's server*** to retrieve the photo or video.  An
                embedded photo or video will then hyperlink to the third-party webpage for
17              display . . . .

18   *Id.* (emphases added).

19          This allegation provides a complete factual basis to resolve the claims of secondary liability in

20   this motion to dismiss:  Just as in *Hunley*, Plaintiff affirmatively alleges that **Meta's servers**—not servers

21   owned or controlled by any (as yet identified) third-party embedders—host and transmit the allegedly

22   infringing content.  Specifically, Plaintiff alleges that Facebook's embed tool provides HTML code that

23   causes the user's browser to retrieve the post **from Meta**, allowing the web designer to copy and paste

24   that snippet of code into the HTML file for their own webpage.  *Id.* ¶¶ 21, 23.  As a result, the Amended

25   Complaint alleges that when a user visits the third-party webpage, the HTML file transmitted to the

26   user's browser contains the embed code copied from Meta.  *Id.* ¶¶ 3, 33, 35.

27

28

1   Upon receiving a request from the user's computer for that image, Meta's servers respond by

2   transmitting the image.  *Id.* ¶ 33.  The user's browser then displays the image from that file sent by

3   Meta's servers onto the user's screen.  *Id.* ¶¶ 3, 33.

4   Because the user's browser displays the image in the context of the third-party webpage, the

5   image is said to be "embedded" in the layout of the webpage.  The embedded Facebook photograph is

6   never hosted on or transmitted through the third-party servers; it is hosted only on Facebook's servers.

7   *Id.* ¶ 47 (alleging that the Facebook embed tool works "without those third-party embedders ever having

8   actual possession of the copyrighted works"); ¶ 33 ("'[E]mbedding' is a technical process by which a

9   copyrighted work can be made visible and displayed ***without the copyrighted work being saved on the***

10   ***server of the third-party website***.") (emphasis added).

11   **III.   LEGAL STANDARD**

12   To survive a motion to dismiss, Plaintiff must allege "enough facts to state a claim to relief that is

13   plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

14   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

15   inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

16   (2009).  While the Court must accept Plaintiff's well-pleaded factual allegations as true, it need not

17   accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere

18   conclusory statements . . . ."  *Id.*  Facts pleaded by a plaintiff must be "enough to raise a right to relief

19   above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.

20   Although Federal Rule of Civil Procedure 15(a) is "very liberal . . . . a district court need not

21   grant leave to amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith;

22   (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist West,*

23   *Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  "A district court's discretion to deny leave to amend is

24   particularly broad where the plaintiff has previously amended."  *Salameh v. Tarsadia Hotel*, 726 F.3d

25   1124, 1133 (9th Cir. 2013) (internal quotation marks omitted) (citations omitted).  Where a plaintiff has

26   "not offered a credible explanation" for contradictions in amended allegations, "the Court need not

27   accept their amended allegations as true."  *Bauer v. Tacey Goss, P.S.,* No. C 12-00876 JSW, 2012 WL

28   2838834, at *3 (N.D. Cal. July 10, 2012).

5

IV.     ARGUMENT

Plaintiff asserts four sets of claims in the Amended Complaint:  1) secondary liability for copyright infringement from the use of Meta's embedding tool; 2) direct liability for copyright infringement from the use of Meta's embedding tool; 3) false advertising under the Lanham Act; and 4) intentional removal and/or alteration of the CMI in the asserted photos under section 1202 of the DMCA. For the reasons discussed below, each of these claims fails to meet the applicable pleading standards and should be dismissed without leave to amend.

A.      Plaintiff Has Not Pled Indirect Infringement

Many of Plaintiff's allegations regarding direct infringement by the third-party websites are nearly identical to plaintiffs' allegations in *Hunley*, and so should be dismissed for the same reasons. (The main difference is that whereas plaintiffs in *Hunley* specifically alleged embedding by Buzzfeed and Time, Plaintiff here never identifies any specific third-party embedders.  *Compare* Compl. ¶¶ 11-12, *Hunley*, ECF No. 1, *with* Am. Compl. ¶ 70.)

There are two types of copyright liability, direct and secondary.  Direct copyright liability seeks to hold a company liable for its own infringement, while secondary liability (also known as indirect infringement) seeks to hold a company liable for infringement by another.  *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666, 670 (9th Cir. 2017).  For that reason, it is essential in assessing a claim for copyright infringement to determine at the outset who committed the allegedly infringing act, and is therefore accused of direct infringement, and who is accused only under a theory of secondary liability.  *See Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 455 (2014) ("The distinction between direct and secondary liability would collapse if there were not a clear rule for determining whether **the defendant** committed the infringing act.") (Scalia, J., dissenting) (emphasis added); *see also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 & n.3 (9th Cir. 2019) (quoting the *Aereo* dissent for the direct liability standard, and explaining that "Justice Scalia's dissent [in *Aereo*] offers instructive background").

1.      Plaintiff must plausibly allege that third-party websites directly infringed by embedding the copyrighted content.

As in *Hunley*, Plaintiff alleges that Meta is secondarily liable for (here, unidentified) third parties that embed copyrighted content from Meta's platform (Facebook) onto their own websites.  Secondary

liability, however, must be predicated on a plausible claim of direct infringement.  That is, "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement *by a third party*." *Perfect 10, Inc v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (quoting *A & M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)) (emphasis added).  Here, Plaintiff alleges that the direct infringers are third-party websites that embedded Plaintiff's works uploaded to Facebook.  Accordingly, if those websites cannot be held *directly* liable for copyright infringement (and, as discussed below, they cannot), then Meta cannot be held *secondarily* liable.

### 2.   Plaintiff's allegations of embedding do not constitute direct infringement under the Ninth Circuit's "Server Test".

For all three counts of secondary liability (induced, contributory, and vicarious), the Amended Complaint recites the same threadbare allegations of direct liability by third parties:  that "Facebook's embed users"—whom Plaintiff never identifies specifically—violated Plaintiff's exclusive rights under section 106 of the Copyright Act by "embedding infringing copies" of his photos, videos, and audiovisual works from Facebook.  *See, e.g.*, Am. Compl. ¶ 104.  The Amended Complaint, however, also alleges that embedding of Facebook content directs the user's browser to *Meta's* servers to retrieve that content.  Plaintiff's secondary liability claims thus fail because where a third party does not host the accused material on its own server, as is the case alleged here, they cannot be a direct infringer as a matter of law in the Ninth Circuit.

#### a.   The Server Test

In *Perfect 10 v. Amazon*, the plaintiff alleged that Google infringed its display and distribution rights by providing a link to full-sized copyrighted photos on the plaintiff's website via Google's image search.  The district court denied the request for a preliminary injunction, holding that the plaintiff was not likely to prevail because Google's servers did not store or communicate the copyrighted work.  The Ninth Circuit affirmed, reiterating that Google did not directly infringe Perfect 10's section 106(5) display rights because the full-size photos viewed through Google's image search were actually hosted on and transmitted to the user's browser by third-party servers, not Google's servers.  "Instead of communicating a copy of the image," the court reasoned, Google merely "provide[d] HTML instructions that direct[ed] a user's browser to a website publisher's computer that store[d] the full-size photographic

image." *Perfect 10*, 508 F.3d at 1161.  Those HTML instructions "are lines of text, not a photographic

image[,]" and "do not themselves cause infringing images to appear on the user's computer screen." *Id.*

They "merely give[] the address of the image to the user's browser[,]" which "then interacts with the

computer that stores the infringing image" to cause the image to appear.  *Id.*  Thus, "[p]roviding . . .

HTML instructions is not equivalent to showing a copy."  *Id.*

      The court applied the same reasoning to reject Perfect 10's assertion of its section 106(3)

distribution rights[3]:

> Google's search engine communicates HTML instructions that tell a user's
> browser where to find full-size images on a website publisher's computer,
> but ***Google does not itself distribute copies of the infringing photographs***.
> It is the website publisher's computer that distributes copies of the images
> by transmitting the photographic image electronically to the user's
> computer.

*Id.* at 1162 (emphasis added).

      The rule that a website must host the accused content on its own servers to be subject to ***direct***

***liability*** for copyright infringement is now known as the "server test."  *See id.* at 1161; *see also* Order

Granting Mot. to Dismiss at 5, *Hunley*, ECF No. 27 (citing *Bell v. Wilmott Storage Servs., LLC*, No. 19-

55882, 2021 WL 4097499, at *5 (9th Cir. Sept. 9, 2021)).

      **b.**    **The "Server Test" Bars Plaintiff's Indirect Infringement Claims**

      Meta's embed code links a user's browser to content on Meta's servers the same way Google's

image search linked a user's browser to content on third-party servers.  As described above, third-party

users deliver HTML instructions from their servers to the user's browser, the user's browser fetches the

embedded content from Meta's server, then the user's browser generates the webpage on the user's

---

[3] Perfect 10 did not assert its section 106(1) right to reproduce, but the Ninth Circuit explained that the
server test would likewise apply to section 106(1) because it also requires that the infringer have and
reproduce a "copy" of the work.  *Perfect 10, Inc.*, 508 F.3d at 1160-61 ("Because Google's computers do
not store the photographic images, Google does not have a copy of the images for purposes of the
Copyright Act.  In other words, Google does not have any 'material objects . . . in which a work is
fixed . . . and from which the work can be perceived, ***reproduced***, or otherwise communicated' and thus
cannot communicate a copy.") (alterations in original) (emphasis added) (quoting 17 U.S.C. § 101
(defining "copies" as "material objects, other than phonorecords, in which a work is fixed by any method
now known or later developed, and from which the work can be perceived, reproduced, or otherwise
communicated, either directly or with the aid of a machine or device.")).

screen for viewing.  Under the Ninth Circuit's server test, a third party's act of delivering HTML instructions to the user's browser that merely links to copyrighted works on Meta's servers is not direct infringement.

Critically, the Amended Complaint admits that when third-party users embed content from Facebook, the content is transmitted from Meta's servers.  Am. Compl. ¶ 33 ("'embedding' is a technical process by which a copyrighted work can be made visible and displayed *without the copyrighted work being saved on the server of the third-party website.*") (emphasis added).  *See also id.* ("Put another way, 'embedding' a photograph or video on a webpage is the act of a technical web coder adding a specific 'embed' code to the HTML instructions that incorporates a photograph or video, *hosted in this case on Facebook's server*, to be displayed on a third-party webpage that the third-party controls with regard to the other text, photos or videos around the embedded work.  To embed a photo or video, the coder or web designer adds an 'embed' code to the HTML instructions from a public Facebook account.  *This code directs the browser to the Facebook server to retrieve the photo or video*.") (emphases added).  Notably, aside from replacing "Instagram" with "Facebook," these allegations regarding the technical aspects of how the alleged embedding process works are *identical* to those cited by this Court in its order granting Instagram's motion to dismiss in *Hunley*.  *See* Order Granting Mot. to Dismiss at 2, *Hunley*, ECF No. 27 (citing Compl. ¶¶ 34-35).  Thus, taking Plaintiff's factual allegations as true, as the Court must in assessing a motion to dismiss, there is no direct infringement upon which Plaintiff's claims of secondary liability can be based.[4]

---

[4] In addition to alleging embedding, the Amended Complaint briefly alleges that "[t]hrough that same route" the embedder "could save the photo or video to its server" such that a third party could cause the embedded content to be "simultaneously displayed on that third party website and saved to that third party's server."  Am. Compl. ¶ 3 (emphasis added).  That allegation does not appear to be the basis of Plaintiff's secondary liability claims, which are directed to the embedding process itself.  But even if they were, such allegations are inconsistent with Plaintiff's later allegations that embedding enables display "without the copyrighted work being saved on the server of the third-party website." *Id.* ¶ 33.  *See also id.* ¶ 35 ("As a result the user sees the embedded content on the website, even though the content is actually hosted on a third party's server, *rather than on the server that hosts the website*.") (emphasis added).  Such contradictory allegations provide an additional basis for dismissal.  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-WHO, 2016 WL 6393503, *5 (N.D. Cal. Oct. 28, 2016) ("Courts may dismiss a claim as not plausible where its supporting factual allegations are contradictory.").

1

2

**3.     Leave to amend would be futile for Plaintiff's secondary copyright liability claims.**

Leave to amend here would be futile because the identity of the server that transmits the copyrighted works to the user is undisputed:  Plaintiff alleges that the accused embedded content is transmitted from Meta's servers, not the third-party embedder's servers, to the user's browser.  *See* Am. Compl. ¶ 33 ("Put another way, 'embedding' a photograph or video on a webpage is the act of a technical web coder adding a specific 'embed' code to the HTML instructions that incorporates a photograph or video, ***hosted in this case on Facebook's server***, to be displayed on a third-party webpage that the third party controls with regard to the other text, photos or videos around the embedded work."). Thus, as this Court found in *Hunley*, there is no set of facts Plaintiff could allege—without contradicting himself—that would change the applicability of the Ninth Circuit's server test.  *See Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1393 (9th Cir. 1997) (amendment is futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (citation omitted); Order Granting Mot. to Dismiss Without Leave to Amend at 3, *Hunley*, ECF No. 35 ("The Court concludes that the deficiency in Hunley's first two complaints cannot be cured, as it is undisputed that the third-party infringers do not store the photos on their own servers as required by *Perfect 10*.").

**B.     Plaintiff Has Not Pled Direct Infringement**

Plaintiff's direct infringement claim should likewise be dismissed with prejudice under the server test.  To state a claim for direct copyright infringement, a plaintiff must allege:  (1) ownership of the allegedly infringing material; (2) violation of at least one exclusive right granted under 17 U.S.C. § 106, including the right to reproduce, display, distribute, publicly perform, or prepare derivative works; and (3) causation, also referred to as volitional conduct.  *VHT, Inc.*, 918 F.3d at 731.

Plaintiff alleges his works have been directly infringed by the "embed[ding of] his copyrighted photos from his Facebook account to a third-party's website" through the use of Facebook's embedding tool.  Am. Compl. ¶ 43.  Plaintiff, however, also includes ambiguous assertions of direct infringement that do not identify what specific use of the embedding tool are the basis for his direct infringement claim, or even where the asserted photos are embedded to.  *See, e.g.*, *id.* ¶ 4. ("[Plaintiff] is the creator of high-quality photographs and the owner of copyrighted works that have been unlawfully embedded from

10

his 3rd party hosts and his Facebook account page . . . .").  Additionally, the Amended Complaint is

unclear as to which specific works are asserted.  *Id.* ¶ 22 (alleging that "[Plaintiff's] ***copyright protected***

***material and non-copyrighted materials*** have been stored on Facebook servers.") (emphasis added).

Such vague and ambiguous pleading does not rise to the level of particularity required to survive a Rule

12(b)(6) motion to dismiss.  *See Redd Grp., LLC v. Glass Guru Franchise Sys., Inc.*, No. 12-cv-04070-

JST, 2013 WL 3462078, *5 (N.D. Cal. July 8, 2013) (granting motion to dismiss where plaintiffs

inadequately described in their complaint "which materials infringe[d] Plaintiffs' copyright."); *see also*

*Miller v. Facebook, Inc.*, No. C 10-00264 WHA, 2010 WL 1292708, at *1 (N.D. Cal. Mar. 31, 2010)

(granting motion to dismiss where the complaint "d[id] not specify what exactly [was] published on

defendant Facebook's website with regard to ChainRxn," because it "d[id] not allege whether defendant

Facebook's website contain[ed] information about ChainRxn, a link to the ChainRxn game, the actual

ChainRxn game, pictures of the ChainRxn game, or a combination of these and/or other things.").

Moreover, under any reasonable interpretation of the factual allegations, Plaintiff cannot allege a

plausible claim of direct infringement.

***First***, if Plaintiff's direct infringement claim was based on the display on other websites of the

photos Logan uploaded to Facebook via Facebook's embedding function, as with Plaintiff's secondary

liability claims, it would fail because Plaintiff granted Meta a license for such displays.  The Amended

Complaint affirmatively alleges that Logan and the putative class are individuals who "uploaded their

intellectual property in the form of photo and videos to Facebook . . . ."  Am. Compl. ¶ 46.  Meta's

Terms of Use make clear that uploading copyrighted works to Facebook automatically grants Meta a

license to host and display those works:

> [W]hen you ***share, post, or upload*** content that is covered by intellectual
> property rights on or in connection with our Products, you grant us a non-
> exclusive, transferable, sub-licensable, royalty-free, and worldwide ***license***
> ***to host, use, distribute, modify, run, copy, publicly perform or display,***
> ***translate, and create derivative works of your content*** (consistent with
> your privacy and application settings).  This means, for example, that if
> you share a photo on Facebook, ***you give us permission to store, copy, and***
> ***share it with others*** (again, consistent with your settings) such as service
> providers that support our service or other Meta Products you use.  This
> license will end when your content is deleted from our systems.

Lee Decl. Ex. 1 at pdf pp. 5-6 (emphases added).

As discussed with respect to indirect infringement, the Amended Complaint alleges that embedded content is hosted on Facebook's servers, not third-party embedders' servers, thereby confirming that embedding falls within the scope of the license shown above, which permits Meta to host and share uploaded content.  *See* Am. Compl. ¶ 33 ("Put another way, 'embedding' a photograph or video on a webpage is the act of a technical web coder adding a specific 'embed' code to the HTML instructions that incorporates a photograph or video, ***hosted in this case on Facebook's server***, to be displayed on a third-party webpage . . . .") (emphasis added).  Thus, Plaintiff cannot state a claim of direct infringement based on embedding on third party websites.

***Second***, if Plaintiff's claim was somehow based on Meta embedding ***to Facebook*** works that Plaintiff posted to websites ***other than*** Facebook, *see id.* ¶ 18, that claim would fail, too.  Under the Ninth Circuit's server test discussed above, any display of the work in that circumstance would have been made by the third-party website whose server hosts the image, not by Meta, and so that embedding could not be the basis for direct infringement claims ***against Meta***.

***Third***, if Plaintiff's claim was based not on any actual display of the asserted works, but instead on Meta's provision of "embed code" to third parties, there would be no plausible direct infringement claim against Meta.  Specifically, Plaintiff alleges that Meta provided a "Facebook API" by which ***a third party*** could copy "'embed' code" into the HTML of their website to hyperlink users to the asserted works posted on Facebook.  *Id.* ¶¶ 32-33,35-38, 40-42.  Plaintiff is alleging that the third party, not Meta, is committing the allegedly infringing act.  *Id.* ¶ 35 ("Embedding allows a [third party] website coder to incorporate content . . . into the coder's website.").  As discussed above, providing HTML instructions is not showing a copy.  *Perfect 10, Inc.*, 508 F.3d at 1162.  That is a paradigmatic question of secondary liability, not direct infringement.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (secondary liability renders those liable for infringement "committed by another") (citation omitted); *Perfect 10, Inc.*, 847 F.3d at 670 ("[A]utomatic copying, storage, and transmission of copyrighted materials, ***when instigated by others***, does not render an Internet service provider strictly liable for [direct] copyright infringement.") (cleaned up) (emphasis added); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("If the Copyright Act does not hold the owner of the copying machine liable as a ***direct*** infringer when its customer copies infringing material without knowledge of

the owner, the ISP should not be found liable as a direct infringer when its facility *is used by a subscriber* to violate a copyright without intervening conduct of the ISP.") (emphases added).

Thus, Plaintiff has not stated a plausible claim of direct infringement, and under the server test and the license Plaintiff granted to Meta, Plaintiff cannot assert a valid claim of direct infringement, making further amendment futile.  The direct infringement claims should be dismissed without leave to amend.[5]

### C.   Authorship Does Not Give Rise to a False Advertising Claim Under the Lanham Act

Logan's false advertising claim also fails as a matter of law.  15 U.S.C. § 1125(a) consists of two separate causes of action:  subsection (a)(1)(A) covers false designation of origin claims, and subsection (a)(1)(B) covers false advertising.  *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990-91 (9th Cir. 2008).  Logan asserts only a claim of false advertising.  Am. Compl. at 25 (titling the first cause of action, "Lanham Act False Advertising Under 15 U.S.C. § 1125(a)").  False advertising arises where a party misrepresents, in commercial advertising or promotion, the "nature, characteristics, qualities, or geographic origin" of "another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).

Logan alleges Defendant removed Logan's identifying information and identified Logan's photos as Defendant's own, thereby committing "a false or misleading representation of fact regarding the creation and ownership of the images."  Am. Compl. ¶ 80.  But allegations of misattribution do not give rise to a claim for false advertising under the Lanham Act.  Courts consistently hold that a representation about authorship is not a representation about the nature, characteristics, or qualities of a good.  *See Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006) (collecting cases); *id.* ("the holding in *Dastar* that the word 'origin' in § 43(a)(1)(A) refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, [and] qualities' in § 43(a)(1)(B) cannot be read to refer to authorship.") (alteration in original) (citing *Dastar Corp. v.*

---

[5] To the extent Plaintiff attempts to assert direct infringement claims beyond the allegedly embedded photos, those claims fail too because Plaintiff has only alleged registration of "certain embedded photos".  Am. Compl. ¶ 51.  *See* 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title.").

13

1    *Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)).  Here, Plaintiff does not make ***any*** allegations

2    regarding the nature, characteristics, or quality of the photos.  The Amended Complaint even

3    affirmatively alleges that there are no changes to content that is embedded.  Am. Compl. ¶ 3 ("third

4    parties can copy the HTML code of a Facebook user's post and paste it into the third party's website,

5    causing the photo or video posted to that Facebook user's account to be ***simultaneously displayed*** on that

6    third party website"); *id.* ¶ 41 ("a viewer of the webpage where the copyrighted work is 'embedded'

7    ***likely does not even know*** that the photo or video displayed in the body of the webpage has been

8    'embedded' into the page with the actual photo or video's file being stored and saved on Facebook's

9    server.") (emphases added).

10       Taking these allegations as true, the Amended Complaint does not give rise to a Lanham Act false

11   advertising claim.  Indeed, to hold that authorship is actionable under the Lanham Act would "provide

12   authors of creative works with perpetual protection under the Lanham Act that they did not have under

13   the Copyright Act."  *Oppenheimer v. Allvoices, Inc.*, No. C 14-00499 LB, 2014 WL 2604033, at *11 n.10

14   (N.D. Cal. June 10, 2014); *see also Dastar Corp.*, 539 U.S. at 34 (declining to construe the Lanham Act

15   in a way that would lead to "misuse or over-extension of trademark and related protections into areas

16   traditionally occupied by patent or copyright.") (internal quotation marks omitted) (citation omitted).

17       To the extent that Logan's Lanham Act cause of action is predicated not on authorship but on

18   Logan's allegation that Meta "stripp[ed] off all licensing information and conditions," licensing status of

19   a copyright work is also not actionable as false advertising.  *See Sybersound Recs., Inc. v. UAV Corp.*,

20   517 F.3d 1137, 1144 (9th Cir. 2008) (licensing status of copyrighted recording not a "characteristic"

21   under subsection (B)).

22       Logan's false advertising claim should be dismissed with prejudice.

23   **D.    Plaintiff Has Not Pled Removal or Alteration of Copyright Management Information**

24       Plaintiff's claim under section 1202 of the DMCA fails because the Amended Complaint does not

25   include any supporting factual allegations, and in fact makes affirmative allegations which foreclose a

26   claim.  Section 1202(b)(1) of the DMCA provides that "No person shall, without the authority of the

27   copyright owner or the law . . . intentionally remove or alter any copyright management information[.]"

28   Section 1202(c) defines copyright management information (CMI) to include:  "[t]he title and other

14

information identifying the work, including the information set forth on a notice of copyright;" "[t]he name of, and other identifying information about, the author of a work;" and "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c).

Plaintiff's Fourth Cause of Action recites the statutory definition of CMI and then asserts, in conclusory fashion, that each element of a claim under section 1202(b) has been met. *See* Am. Compl. ¶¶ 119-121, 126-128. But neither the cause of action nor the body of the Amended Complaint allege what CMI is at issue, or any removal or alteration by Meta of the CMI. For instance, the CMI at issue is alleged to be contained within the asserted photos, *id.* ¶ 119 ("The Photo contained CMI."), yet the Amended Complaint does not identify any CMI that is "contained" in the photo. In similar situations, courts in this district have held that such bald allegations should be dismissed. *See, e.g.*, *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. Jun. 18, 2019) (granting motion to dismiss for failure to state a claim under section 1202(b)(2) where plaintiff "merely alleged that his photographs 'were altered to remove certain of [his] copyright management information' without providing any facts to identify which photographs had CMI removed or to describe what the removed or altered CMI was") (alteration in original) (citation omitted).

To the contrary, the images included in the Amended Complaint do not show *any* textual information at all, let alone information that could be considered CMI. *See, e.g.*, Am. Compl. ¶ 56(a):



1    Logan's factual allegations regarding removal of CMI similarly contradict his own claims.  Logan alleges

2    he has "gone to great lengths to include his own name in the actual file name," and that Meta "excluded

3    that identifying information," *id.* ¶ 30.  But he also includes a URL allegedly from Facebook's servers

4    that does not remove or alter, but *maintains*, Logan's name and file name.  *See id.* ¶ 22 n. 1 (providing an

5    example of Meta servers allegedly storing Logan's "copyright protected material and non-copyrighted

6    materials" at "https://externallax32.xx.fbcdn.net/safe_image.php?w=90&h=90&url=

7    https%3A%2F%2Fupload.wikimedia.org%2Fwikipedia%2Fcommons%2Fthumb%2Fc%2Fcf%2F

8    ***The_City_of_Newport_Beach_July_2014_photo_D_Ramey_Logan.jpg***%2F720px-

9    ***The_City_of_Newport_Beach_July_2014_photo_D_Ramey_Logan.jpg***&cfs=1&fallback=hub_city&ext

10   =jpg&_nc_oe=7015b&_nc_sid=867500&_nc_o2e=1&ccb=3-6&_nc_hash=AQGVTvPnobeuQnrZ")

11   (emphases added).  Such allegations are directly inconsistent with Logan's claims that Facebook

12   removed or altered Logan's identifying information, and thus support dismissal with prejudice.  *See*

13   *Bauer*, 2012 WL 2838834, at *3 (refusing to accept amended allegations as true where Plaintiff "had not

14   offered a credible explanation" for the contradictions).

15   **V.    CONCLUSION**

16         For the foregoing reasons, Meta respectfully requests that the Court dismiss Plaintiff's Amended

17   Complaint in its entirety without leave to amend.

18

19   Dated:  July 27, 2022                         DURIE TANGRI LLP

20

21                                                By:_____*/s/ Joseph C. Gratz*_____
                                                        JOSEPH C. GRATZ
22

23                                                Attorneys for Defendant
                                                  META PLATFORMS, INC., f/k/a FACEBOOK, INC.
24

25

26

27

28

NOTICE OF AND MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF /
CASE NO. 4:22-CV-01847-CRB

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on July 27, 2022 the within document was filed with the Clerk of the Court

3

using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

5

*/s/ Joseph C. Gratz*
JOSEPH C. GRATZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF AND MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF /
CASE NO. 4:22-CV-01847-CRB