IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON RAMEY LOGAN,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 22-cv-01847-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I. BACKGROUND

Plaintiff Don Logan initiated this suit as a putative class action against Defendant Meta Platforms, Inc. ("Meta"), asserting various copyright-related claims revolving around Facebook's embedding tool. Logan's First Amended Complaint ("FAC") (dkt. 18) sets forth three sets of factual allegations. First, Logan alleges that Facebook's embedding tool enables third parties to infringe his copyrighted photos uploaded onto his Facebook account by embedding them to third-party websites. Logan argues that Meta, by providing the tool, is secondarily liable for the infringement. Second, Logan alleges that Meta itself directly infringed his photos by embedding them from other websites onto Facebook and saving them on Facebook's servers. Third, Logan brings claims under the Lanham Act, 15 U.S.C. § 1125(a), and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, alleging that Meta removed his copyright information from his photos and replaced it with information misrepresenting the photos as its own.

Meta moves to dismiss the FAC. The Court, finding this mater suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), GRANTS the motion with leave to amend.

### A.  Factual Background

#### 1.  Two Types of Embedding

Broadly, Logan alleges that Meta is liable for two types of embedding activity: (1) third parties embedding content from Facebook users' pages onto third-party websites, and (2) Meta embedding content from other websites onto Facebook.

Generally, embedding is a process that enables websites to incorporate other websites' original content—"links, images, video, gifs and other content"—onto their own sites. FAC ¶¶ 3, 35. For example, Facebook users can upload original content onto Facebook; the content is stored on Facebook's servers[1] and assigned "unique hypertext markup language ('HTML') code."[2] Id. ¶ 3. Non-Facebook users can use other websites' embedding function to "add" the Facebook content's corresponding HTML code to the third-party website. Id. ¶ 33; Mot. (dkt. 23) at 3. The "embed" code "directs the [third-party] browser to the Facebook servers to retrieve the photo or video," allowing the external website to display the photo or video hosted on Facebook's servers. FAC ¶¶ 33, 35; Mot. at 3.

The FAC also alleges that Meta itself can embed content from third-party websites onto Facebook. FAC ¶¶ 3, 18, 33, 35. According to the FAC, the embedding website—whether a third-party website or Facebook—can save the embedded content onto its own server using the "same [embedding] route," should it choose to do so. See id. ¶¶ 3, 33, 35. Meta owns a "unique script tool known as 'safe image.php' that it [allegedly] uses to take URL[s] and store them on Facebook's servers." Id. ¶ 20.

#### 2.  The Complaint's Factual Allegations

Logan is a California resident and Facebook user. Id. ¶ 4. He is also the creator and copyright owner of various "high-quality photographs" that depict scenic or landmark coastal areas around the country. Id. ¶¶ 4, 56. Meta is a Delaware company headquartered

---

[1] "A server is . . . a computer connected to the Internet." Mot. at 3.
[2] "The HTML code allows for the arrangement of text and/or images and/videos on a page . . . . When including a photograph or video on a webpage, the HTML code instructs the browser how and where to place the photograph(s) or video(s)." FAC ¶ 33.

in Menlo Park, California, and the parent company of Facebook, Inc. ("Facebook"). Id. ¶ 5. Facebook "is a social media and social networking service company" that operates through the Internet. Id. ¶ 1.

### a. Meta's Indirect Infringement Through Facebook's Embedding Tool

At an unspecified point in time, Logan created a Facebook account and agreed to Meta's Terms of Use.[3] Id. ¶¶ 4, 46; Mot. at 2. Under the Terms of Use, users grant Meta "a nonexclusive license to publicly reproduce and display the content the user uploads to Facebook." Mot. at 2; see also Declaration of Annie A. Lee (dkt. 23-1) ¶ 2; Ex. 1 (dkt. 23-2). Logan then began posting photos on his presumably public Facebook account. FAC ¶ 4; see Mot. at 3 ("Only public posts can be embedded; private posts cannot.").

On July 1, 2013, Facebook introduced its embedding tool. FAC ¶ 72. The tool allows any third-party website to embed images from Logan's Facebook account onto its own site. Id. ¶¶ 32–34, 38–47, 54–56, 58–66. Logan alleges that third-party websites embedded various of his copyrighted photos, including "some" unspecified photos from a list of twenty-six photos provided in the FAC. Id. ¶ 56. Logan further alleges that third parties infringed his exclusive copyright rights by embedding photos from his Facebook account to external websites "all over the internet." Id. ¶¶ 3, 43.

### b. Meta's Direct Infringement by Embedding Photos from Wikimedia Commons

Logan separately alleges that at an unspecified point in time, Meta itself embedded and thereafter displayed some of Logan's photos from Wikimedia Commons ("Wikimedia") and saved them onto Facebook's servers. Id. ¶¶ 1, 3, 17–20, 22–30, 37, 41,

---

[3] In reviewing a motion to dismiss, "[a] court may . . . consider . . . documents incorporated by reference in the complaint." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see also Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322. Documents are subject to incorporation by reference if the plaintiff refers to them "extensively," or they form the basis of the complaint. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). The FAC alleges that "Facebook['s] terms of use implied to Plaintiff and members of the Class that Facebook would not allow unauthorized use of copyrighted works through its 'embed' feature." FAC ¶ 46. Because Meta's Terms of Use form the basis of the FAC, they are subject to incorporation by reference.

3

56; see also id. ¶ 22 n.1 (providing the link of a Newport Beach photo originally posted on Wikimedia and allegedly saved onto Facebook's servers). Logan published the photos on Wikimedia under a "Creative Commons" license, which permits licensees to "reproduce, publicly display and distribute copies" of the photos under certain restrictions, including attributing Logan as the author. Id. ¶¶ 25–26. Logan alleges that Meta stripped the photos of all identifying information and falsely identified itself as the owner by displaying its "copyright tag on the bottom of each Facebook user page," contravening the Creative Commons license. Id. ¶¶ 3, 17–20, 48–50.

### B. Procedural Background

Logan filed the Complaint on February 16, 2022, in the Southern District of New York. Compl. (dkt. 1). On March 21, 2022, the parties stipulated to transfer the action to this District. Stipulation and Order (dkt. 9). On March 24, 2022, the Clerk of Court transferred the case to this District and assigned it to Judge Gonzalez Rogers. District Transfer (dkt. 11). On April 5, 2022, the Court ordered the case related to Hunley v. Instagram, LLC, 3:21-cv-03778-CRB,[4] and reassigned the case to this Court. Order Relating Case (dkt. 14); Case Reassigned (dkt. 15).

On May 16, 2022, Logan filed the FAC. The FAC asserts the following claims: (1) Lanham Act false advertising under 15 U.S.C. § 1125(a), FAC ¶¶ 79–90; (2) direct copyright infringement under 17 U.S.C. § 106, et seq., id. ¶¶ 91–102; (3) inducement of copyright infringement, id. ¶¶ 103–13; (4) violation of the DMCA, 17 U.S.C. §§ 1201–1205, id. ¶¶ 114–32; (5) contributory copyright infringement, id. ¶¶ 133–40; and (6) vicarious copyright infringement, id. ¶¶ 141–50.

On July 27, 2022, Meta filed its Motion to Dismiss. On September 7, 2022, Logan opposed the motion, and on September 21, 2022, Meta filed its Reply. Opp'n (dkt. 26);

---

[4] Hunley has appealed this Court's dismissal of that case, seeking a reversal of Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007), which required the dismissal of Hunley's claims. See Hunley v. Instagram, LLC, 22-15293 (9th Cir.); Hunley v. Instagram, LLC, No. 21-cv-03778-CRB, 2021 WL 4243385 (N.D. Cal. Sept. 17, 2021); Hunley v. Instagram, LLC, No. 21-cv-03778-CRB, 2022 WL 298570 (N.D. Cal. Feb. 1, 2022) (dismissing the claims with prejudice).

1   Reply (dkt. 28).

2   **II.     LEGAL STANDARD**

3          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be
4   dismissed for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P.
5   12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either "a cognizable legal theory"
6   or "sufficient facts alleged" under such a theory.  Godecke v. Kinetic Concepts, Inc., 937
7   F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual
8   allegations depends on whether it pleads enough facts to "state a claim to relief that is
9   plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic
10  Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff
11  pleads factual content that allows the court to draw the reasonable inference that the
12  defendant is liable for the misconduct alleged."  Id.  This is not a "probability
13  requirement," but it requires more than a "sheer possibility" that the defendant is liable:
14  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it
15  stops short of the line between possibility and plausibility of entitlement to relief."  Id.
16  (quoting Twombly, 550 U.S. at 557).

17         Courts should allow a plaintiff leave to amend unless amendment would be futile.
18  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246–47 (9th
19  Cir. 1990).  To determine whether amendment would be futile, courts examine whether the
20  complaint can be amended to cure the defect requiring dismissal "without contradicting
21  any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d
22  291, 296 (9th Cir. 1990).

23  **III.    DISCUSSION**

24         Meta moves to dismiss all of Logan's claims without leave to amend.  Mot. at 6.
25  Because the FAC fails to plead that any third party saved Logan's photos onto their
26  servers, the FAC fails to plead the underlying element of third-party direct infringement
27  for Logan's secondary liability claims.  The Court therefore dismisses Logan's inducement
28  of copyright infringement, contributory copyright infringement, and vicarious copyright

infringement claims. Because Logan fails to plead the copyright registration of the photos at issue, the Court dismisses his direct copyright infringement claim. The Court also dismisses Logan's false advertising claim, because Supreme Court and Ninth Circuit precedent foreclose repackaging his copyright claims under the Lanham Act. Finally, Logan has failed to plead that Meta provided false copyright management information ("CMI") in connection with his photos, or that it knowingly removed his CMI. Accordingly, the Court dismisses his DMCA claim. But because amendment would not be futile, the Court GRANTS leave to amend on all claims.

### A. Secondary Liability for Third-Party Copyright Infringement

Logan brings inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement claims, alleging that Meta is secondarily liable for third parties directly infringing his Facebook photos by embedding them onto other websites. See FAC ¶¶ 3, 33–43, 104–06, 134–35, 142–43. Meta argues that Logan has not adequately pleaded any of his secondary liability claims, because the FAC does not allege that any third party saved his copyrighted photos onto third-party servers in accordance with the Ninth Circuit's "server test." Mot. at 7; see Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1160 (9th Cir. 2007). In opposition, Logan argues that the FAC pleads facts satisfying the Ninth Circuit's server test, because it alleges that Meta saved his photos from Wikimedia onto Facebook's servers. Opp'n at 6–7; see FAC ¶¶ 17–18, 22. As an initial matter, this argument fails, because such allegations go toward Logan's direct copyright infringement claim, rather than to his secondary liability claims.

In order to assert secondary liability claims against Meta, Logan must make the threshold showing that "there has been direct infringement by third parties." Perfect 10, 508 F.3d at 1169. This was the linchpin issue in the related case, Hunley v. Instagram, LLC, No. 21-cv-03778-CRB, 2021 WL 4243385, at *1 (N.D. Cal. Sept. 17, 2021). There, this Court determined that "third parties using Instagram's embedding tool [who] d[id] not store the images and videos embedded on their websites on their own servers or other storage devices" did not satisfy the server test. Id. at *1–2; Perfect 10, 508 F.3d at 1160–

62. "Because [third-parties] d[id] not store the images and videos, they d[id] not 'fix' the copyrighted work in any 'tangible medium of expression.'" Hunley, 2021 WL 4243385, at *2 (quoting 17 U.S.C. § 101). Therefore, third-party embedding did not violate Hunley's exclusive right to display "copies" of his copyrighted works and failed to constitute direct copyright infringement. Id.; see 17 U.S.C. §§ 101, 106. Because Hunley failed to plead the threshold element of direct infringement by third parties, the Court dismissed Hunley's secondary liability claims against Instagram. Hunley, 2021 WL 4243385, at *3; see also Hunley v. Instagram, LLC, No. 21-cv-03778-CRB, 2022 WL 298570, at *2 (N.D. Cal. Feb. 1, 2022) (dismissing the claims with prejudice).

Logan's secondary liability claims face dismissal for the same reason as Hunley's. The closest Logan gets to pleading third-party infringement under the server test is by alleging that third parties "can" save his embedded photos onto their servers. See FAC ¶¶ 3, 33, 35. But the FAC fails to assert that any specific third party actually did so. See id. ¶¶ 3, 35; Mot. at 9. This defectively pleads Logan's secondary liability claims. See Perfect 10, 508 F.3d at 1160–62; BWP Media USA, Inc. v. Linkbucks.com, LLC, No. 14-cv-689-JFW-SHx, 2014 WL 12596429, at *3 (C.D. Cal. Aug. 8, 2014) (internal quotation marks removed) (holding that the plaintiff failed to plead third-party infringement where the FAC failed to state that the "allegedly infringed photographs were not stored directly on the Defendant servers"). Therefore, the Court dismisses Logan's secondary liability claims with leave to amend.

**B.     Direct Copyright Infringement**

First, Meta argues that it cannot be liable for direct infringement, because its Terms of Use grant it a license to host and display any of Logan's photos uploaded to his Facebook account. Mot. at 11. Meta also argues that the FAC fails to plead Logan's direct infringement claim because the FAC only alleges that third parties embedded his photos onto other websites. Id. at 12. Alternatively, Meta argues that—to the extent Logan claims Meta directly infringed by embedding his photos onto Facebook from other websites—the FAC fails to plead that his photos are saved on Meta's servers under the

7

Ninth Circuit's server test. Id.; Perfect 10, 508 F.3d at 1160. Finally, Meta contends that the FAC fails to "identify what specific use of the embedding tool [is] the basis for [Logan's] direct infringement claim," fails to identify which photos were infringed, and fails to plead other elements of direct infringement, including the photos' copyright registration. Mot. at 10–11, 13 n.5; see also FAC ¶ 51; 17 U.S.C. § 411(a). In response, Logan points out that the FAC alleges that his photos were saved on Facebook's servers and that "Facebook took [his] content from other sites," which he argues adequately pleads his direct infringement claim. Opp'n at 6–8; see also FAC ¶¶ 3, 17–20, 22, 28.

      To successfully plead direct copyright infringement, the FAC must establish that Logan owns the allegedly infringed material, and that Meta "violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 666 (9th Cir. 2017) (citing A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001)). Additionally, the plaintiff must show causation, or "volitional conduct," by the defendant. Id.; see also VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 732 (9th Cir. 2019). Logan alleges that he owns the photos in question, and the parties' sole dispute is whether Logan has sufficiently pleaded that Meta violated his exclusive rights under § 106—"reproduc[ing], distribut[ing], and publicly display[ing]" his photos—with sufficient volitional conduct. FAC ¶ 92; see Mot. at 12; Reply at 3–4; Opp'n at 6–8.

      As an initial matter, Meta's arguments misapprehend the FAC's theory of direct infringement. The FAC, though perhaps confusingly drafted, does plead that Meta saved Logan's photos from Wikimedia onto its servers. See FAC ¶ 3 ("Facebook downloaded Logans copyrighted photos from Wikicommons . . . then stored . . . the photos . . . ."); id. ¶¶ 17–20; id. ¶ 22 ("Plaintiff has ascertained through forensic research and investigation effort that his copyright protected material . . . have been stored on Facebook servers[.]"); id. ¶ 29; id. ¶ 56 (listing the twenty-six allegedly infringed photos); id. ¶ 22 n.1 (link to the Newport Beach photo allegedly saved on Facebook's servers). These facts do not go towards Logan's secondary liability claims, but to his direct infringement claim, and

8

specify the allegedly infringed photos at issue.

Meta points out that the FAC confusingly prefaces these photos with the allegation that "Logan's copyrighted works some of which are reproduced below were unlawfully 'embedded' by third party users." Reply at 3; FAC ¶ 56. However, the first photo listed in the FAC is a Newport Beach photo that Logan alleges was unlawfully embedded by Facebook and saved onto Facebook's servers. FAC ¶¶ 22 n.1, 56. Moreover, all the other photos except (b) and (d) were originally Wikimedia files that now appear on Facebook. See id. ¶ 56. Generously construing the FAC, it is reasonable to read "some" of the works that were embedded by third parties as referring to photos (b) and (d), while the remaining photos are photos that Facebook allegedly embedded, displayed, and saved onto its servers. See id.; Brach v. Newsom, 6 F.4th 904, 925 (9th Cir. 2021) ("[T]he allegations of a complaint must be generously construed in the light most favorable to the plaintiff."). Altogether, the FAC adequately pleads that Meta saved Logan's photos onto its servers, satisfying the server test. Perfect 10, 508 F.3d at 1160; see also Live Face on Web, LLC. v. Roshdieh, No. 16-cv-01405-EDCV-JGB (DTBx), 2016 WL 11505589, at *3 (C.D. Cal. Nov. 16, 2016) (holding that pleading that third parties stored the infringing version of plaintiff's software on their computer cache, memory, or hard drive was sufficient to sustain the direct infringement claim).

Nevertheless, Logan's direct infringement claim fails, because the FAC fails to plead another threshold requirement: that Logan registered the photos in question with the U.S. Copyright Office. See Mot. at 13 n.5; Reply at 3–4; FAC ¶ 51. Logan's Opposition is silent on this issue. See Opp'n. A threshold requirement of bringing a copyright suit is—subject to certain limited exceptions not relevant here—that a plaintiff has registered the works at issue with the U.S. Copyright Office. See 17 U.S.C. § 411(a); Fourth Est. Pub. Benefit Corp. v. WallStreet.com, LLC, 139 S. Ct. 881, 886 (2019) (citing 17 U.S.C. §§ 408, 411(c)) (providing that copyright registration "occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright"); see also Ricketts v. Berlanti Prods., No. 20-55912, 2022 WL 1046252, at *1 (9th Cir. Apr.

7, 2022) (citing Fourth Est. Pub. Benefit Corp., 139 S. Ct. at 886). Thus, Logan must plead that the photos allegedly saved onto Facebook's servers were registered with the Copyright Office. See Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 951 (9th Cir. 2019) (citation and quotation marks omitted) ("To state a claim for copyright infringement, [the plaintiff] must allege . . . that [he] owns a valid copyright in [the Subject Work].").

The FAC fails to plead this threshold requirement. All it alleges is that "[Logan] has registered certain embedded photos with the United States Copyright Office." FAC ¶ 51 (emphasis added). This vague allegation fails to establish that the photos at issue are registered with the Copyright Office. See Malibu Textiles, Inc., 922 F.3d at 951; see also Mot. at 13 n.5. Therefore, the Court dismisses Logan's direct copyright infringement claim with leave to amend.

### C.   Lanham Act False Advertising

Meta points out that the FAC brings a Lanham Act false advertising claim on the theory that Meta misrepresented "the creation and ownership" of Logan's photos. Mot. at 13; FAC ¶ 80. Meta argues that Logan cannot bring this claim as a matter of law, citing the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003). Mot. at 13–14. Under Dastar, Meta contends, "allegations of misattribution [of authorship] cannot give rise to a [Lanham Act] false advertising claim," absent "any allegations regarding the nature, characteristics, or quality of the photos." Id. at 13–14 (emphasis removed). Meta alternatively argues that if Logan's false advertising claim is instead predicated on stripping the photos of their licensing information, that too fails to plead an actionable Lanham Act false advertisement claim under Ninth Circuit precedent. Id. at 14; see Sybersound Recs., Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008) (holding that the licensing status of a copyrighted recording does not give rise to a claim under § 1125(a)(1)(B)). Logan disagrees, arguing that Dastar and Sybersound do not bar false advertisement claims over misattributed authorship. Opp'n at 11–13.

Dastar, while on point, does not clearly foreclose plaintiffs from bringing false

advertisement claims under § 1125(a)(1)(B)—claims the Ninth Circuit has identified as "involv[ing] close questions in an unsettled area of the law." Classic Media, Inc. v. Mewborn, 532 F.3d 978, 990 (9th Cir. 2008).  Nevertheless, the Court agrees that the statute forecloses exactly the kind of claim the FAC pleads: a copyright claim repackaged under a trademark statute.

Section 1125(a) of the Lanham Act permits two kinds of claims: false origin under 15 U.S.C. § 1125(a)(1)(A), and false advertisement under § 1125(a)(1)(B).  The FAC pleads a false advertisement claim under the latter subsection.  See FAC ¶¶ 79–90.  Section 1125(a)(1)(B) imposes civil liability on:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

§ 1125(a)(1)(B).

In Dastar, the Supreme Court considered whether plaintiffs could bring false designation of origin claims under § 1125(a)(1)(A) for "reverse passing off"—allegations that the seller "misrepresent[ed] someone else's goods or services as his own." 539 U.S. at 27 n.1.  There, Dastar repackaged and sold as its own a Twentieth Century Fox television series which had entered the public domain after its copyright lapsed.  Id. at 26–27.  Fox sued for false designation of origin under § 1125(a)(1)(A).  Id. at 27.  The Supreme Court held that the statute did not permit Fox to bring the claim, holding that the statutory language "origin of goods" "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  Id. at 37.  "To hold otherwise," the Court reasoned, "would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." Id. (citation omitted).  In dictum, however, the Court distinguished scenarios in which a seller misrepresents the content of the communicative work, suggesting that those

11

circumstances would fall within the purview of § 1125(a)(1)(B) for "misrepresent[ing] the nature, characteristics [or] qualities" of the good. Id. at 38 (quoting § 1125(a)(1)(B)). But where Dastar "merely [misrepresented that] it [wa]s the producer of the video" in question, the Supreme Court refused to recognize liability under the Lanham Act. Id.

The Ninth Circuit's decision in Sybersound applied the Supreme Court's reasoning in Dastar with equal force to § 1125(a)(1)(B) claims, holding that the copyright licensing status of karaoke recordings did not qualify as the "nature, characteristics, or qualities" of goods. 517 F.3d at 1144. Like Dastar, the Ninth Circuit reasoned that "[c]onstruing the Lanham Act to cover misrepresentations about copyright licensing status" would "over-exten[d] . . . into areas traditionally occupied by patent or copyright," by "allow[ing] competitors engaged in the distribution of copyrightable materials to litigate the underlying copyright infringement when they have no standing to do so because they are nonexclusive licensees or third party strangers under copyright law." Id.; see also Dastar, 539 U.S. at 34. The court suggested that by contrast, "the original song and artist of the karaoke recording" might qualify as "characteristics of [a] good." Sybersound, 517 F.3d at 1144.

Applying Dastar and Sybersound's reasoning, "numerous district courts in California have concluded" that litigants cannot bring false advertising claims for misrepresentation of authorship under § 1125(a)(1)(B). Focal Point Films, LLC v. Sandhu, No. 19-cv-02898-JCS, 2019 WL 7020209, at *6 (N.D. Cal. Dec. 20, 2019) (listing cases). This Court concludes likewise.

Dicta from Dastar and Sybersound merely clarify that Logan may bring a false advertisement claim over the content of his photos, not misattributed authorship. Dastar, 539 U.S. at 33, 37; Sybersound, 517 F.3d at 1144. Permitting a false attribution of authorship claim to proceed under § 1125(a)(1)(B) would create overlap between the Lanham and Copyright Acts, as recognized by both precedents. See Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300, 1307 (Fed. Cir. 2009) (applying Ninth Circuit law to hold that authorship is not a nature, characteristic, or quality under § 1125(a)(1)(B)).

Logan's argument that Sybersound dictum distinguishing "the original song and

artist of [a] karaoke recording" as a potential "characteristic of [a] good" permits his false advertising claim is unavailing. 517 F.3d at 1144. In the specific context of karaoke recordings, misrepresenting the artist of a song goes toward the content of the recording, not the recording's originator or author. See Dastar, 539 U.S. at 37. Were the song itself at issue, however, Dastar and Syberound suggest that misrepresenting the song's artist would not qualify as the "nature, characteristic[], [or] qualit[y] . . . of . . . [a] good[]," and would squarely fall within the realm of authorship. § 1125(a)(1)(B); see Dastar, 539 U.S. at 37; Sybersound, 517 F.3d at 1144. "[T]o allow [Logan] to proceed with a false advertising claim that is fundamentally about the origin of an idea, is contrary to the Ninth Circuit's interpretation of Dastar." Baden Sports, Inc., 556 F.3d at 1308 (citing Dastar, 539 U.S. at 37; then citing Sybersound, 517 F.3d at 1144). Therefore, the Court dismisses Logan's false advertising claim. But because Logan may plead that Meta has in some other way misrepresented the "nature, characteristics, [or] qualities" of his photos, the Court GRANTS leave to amend. § 1125(a)(1)(B); see Sweaney, 119 F.3d at 1393.

### D. Violation of the Digital Millennium Copyright Act

The FAC also asserts a DMCA claim under 17 U.S.C. § 1202(a) and (b). FAC ¶¶ 114–32. Meta argues that the FAC inadequately pleads Logan's DMCA claim under either subsection. The Court agrees.

#### 1. False CMI, 17 U.S.C. § 1202(a)

Meta argues that its copyright tag displayed at the bottom of each Facebook user page does not qualify as CMI as defined under 17 U.S.C. § 1202(c), because the information is not "conveyed in connection with" Logan's photos. Reply at 7–8 (quoting § 1202(c)); see FAC ¶¶ 48–50, 115, 125. Logan responds that Meta's copyright tag is false CMI because it provides information misidentifying Meta as the photos' author. Opp'n at 13–14. The Court concludes that Meta's copyright tag does not qualify as CMI "conveyed in connection with" Logan's photos. § 1202(c).

17 U.S.C. § 1202(a) provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement[,] . . . provide[, distribute, or import

13

for distribution] copyright management information that is false." The DMCA defines CMI as any information identifying the work, its author or copyright owner, and the terms and condition of use, or "links to such information," "conveyed in connection with copies . . . of [the] work." Id. § 1202(c).

The Ninth Circuit recently affirmed a district court's grant of summary judgment against a plaintiff's false CMI claim, finding that the defendants' copyright notice was not "conveyed in connection with copies" of the plaintiff's photos. SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc., 804 F. App'x 668, 670–71 (9th Cir. 2020) (quoting § 1202(c)). There, the defendants' copyright notice was generic; "not located on or next to [the] Plaintiff's photos," which "were imprinted with their own copyright markings"; and "located at the bottom of the webpage in a shaded box, separating it from the rest of the content on the webpage." Id. at 671.

The facts here are indistinguishable: Meta's allegedly false CMI is "[a] [generic] copyright tag on the bottom of each Facebook user page," separated from the rest of the content on the webpage, and is not located on or next to Logan's photos. Id.; see FAC ¶ 49. Although SellPoolSuppliesOnline.com considered a false CMI claim on a motion for summary judgment, taking the facts of the FAC as true, Logan has failed to plead that Meta conveyed CMI in connection with his photos. 804 F. App'x at 669.

Accordingly, the Court dismisses Logan's false CMI claim under § 1202(a) with leave to amend.

### 2. Improper Removal of CMI, 17 U.S.C. § 1202(b)

The FAC also alleges that Meta intentionally removed Logan's CMI from his photos "with the knowledge or reasonable grounds to know that it would enable, facilitate, or conceal its own acts of infringement and infringing acts by others." FAC ¶¶ 27–30, 120–29. Meta argues that the FAC fails to state a claim under § 1202(b), because it does not identify the CMI at issue, "or any removal or alteration by Meta of the CMI." Mot. at 15. Meta also points out that the URL of the Newport Beach photo allegedly saved onto Facebook's servers retains Logan's name. Id. at 16; see also FAC ¶ 22 n.1.

Meta's arguments about the FAC's specificity are unpersuasive. The FAC clearly specifies the CMI removed—Logan's "name, the title of the Photograph, and a link to a Creative Commons website . . . setting forth the terms and conditions for use"—and the photos from which the CMI was allegedly removed. FAC ¶¶ 27–30, 56. While none of Logan's photos contain any copyright mark, his identifying information is provided immediately beneath each photo on Wikimedia. See id. ¶ 56. This placement is sufficiently close to qualify as CMI "conveyed in connection with" his photos. § 1202(c); see also Friedman v. Live Nation Merchandise, Inc., 833 F.3d 1180, 1187–88 (9th Cir. 2016) (finding that image credits near the photos but not on them qualified as CMI). Nevertheless, the FAC fails to plead the requisite knowledge under § 1202(b) for both Logan's false CMI and improper removal of CMI claims.

Section 1202(b)(1) prohibits any person, "without the authority of the copyright owner or the law," from "intentionally remov[ing] or alter[ing] any copyright management information." 17 U.S.C. § 1202(b)(1). Section 1202(b)(3) prohibits any person from "distribut[ing], [or] import[ing] for distribution, . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law." Id. § 1202(b)(3). Additionally, "[b]oth provisions . . . require the defendant to possess the mental state of knowing, or having a reasonable basis to know, that his actions 'will induce, enable, facilitate, or conceal' infringement." Stevens v. Corelogic, Inc., 899 F.3d 666, 673 (9th Cir. 2018) (quoting § 1202(b)(1)(3)).

Courts within this District have diverged on the level of specificity required to successfully plead § 1202(b)'s mental state requirements. Compare Philpot v. Alternet Media, Inc., No. 18-cv-044979-TSH, 2018 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018) (dismissing the complaint's bald reiteration of the statutory language); Harrington v. Pinterest, Inc., No. 5:20-cv-05290-EJD, 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022) (citing Stevens, 899 F.3d at 674) (dismissing the § 1202(b) claim absent "a sufficient factual basis from which to infer [the defendant] knew or had a reasonable basis to know that the removal or alteration of CMI . . . w[ould] aid infringement"); with Brown

15

v. Stroud, No. 08-cv-02348-JSW, 2011 WL 2600661, at *6 (N.D. Cal. June 30, 2011) (finding general allegations of scienter sufficiently specific and that "arguments regarding knowledge and intent are better addressed by way of a motion for summary judgment").

However, Federal Rule of Civil Procedure 9(b) provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally." See, e.g., APL Microscopic, LLC v. Steenblock, No. 21-55745, 2022 WL 4830687, at *2 (9th Cir. Oct. 3, 2022) (reversing dismissal of a § 1202(b) claim where screenshots of plaintiff's works without their watermark on defendant's social media pages raised a "reasonable inference" that defendant knowingly removed CMI). Language in Stevens stating that "specific allegations as to how identifiable infringements 'will' be affected are necessary" under § 1202(b) does not indicate otherwise; there, the Ninth Circuit held that "a plaintiff bringing a Section 1202(b) claim must make an affirmative showing" of scienter in the summary judgment context. 899 F.3d at 674 (quoting United States v. Todd, 627 F.3d 329, 334 (9th Cir. 2010)).

Even so, the FAC falls short of pleading § 1202(b)'s "double scienter" requirement. Harrington, 2022 WL 4348460, at *3 (quoting Mango v. BuzzFeed, Inc., 970 F.3d 167, 171 (2d Cir. 2020)). Again, none of Logan's photos contain any watermark or copyright mark; the only identifiable CMI is on Wikimedia, where Logan's name, licensing information, and use permissions are listed directly below each photograph. See FAC ¶ 56. The FAC's theory thus seems to be that embedding the photos itself evidences Meta's intent to remove Logan's CMI from his photos. See id. ¶¶ 29–30.

While plaintiffs may generally allege § 1202(b)'s knowledge requirements, embedding itself cannot establish that a defendant "intentionally remove[d] or alter[ed]" a plaintiff's CMI. § 1202(b)(1). Unlike editing a plaintiff's watermark out of a photo, automatically omitting CMI by embedding a photo out of the full context of the webpage where the CMI is found cannot itself plead intentionality as required by the DMCA. See, e.g., Bain v. Film Indep., Inc., No. 18-cv-4126-PA (JEMX), 2018 WL 6930766, at *5 (C.D. Cal. Aug. 9, 2018) (holding that alleging the removal of a watermark from a film

16

sufficiently pleaded plaintiff's DMCA claim).  By alleging just that, the FAC pleads "threadbare recitals" that Meta "intentionally remove[d] or alter[ed] any copyright management information," or that Meta "kn[ew] or . . . ha[d] reasonable grounds to know, that it w[ould] induce, enable, facilitate, or conceal an infringement of any copyright." Iqbal, 556 U.S. at 678; Stevens, 899 F.3d at 673 (internal quotation marks omitted); see also Kelly v. Arriba Soft Corp., 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), aff'd in part and rev'd in part on other grounds, 280 F.3d 934 (9th Cir. 2002) ("[R]emov[ing] Plaintiff's images from the context of Plaintiff's Web sites where their [CMI] was located, and convert[ing] them to thumbnails in Defendant's index . . . [failed to] show[] [that] Defendant's actions were intentional, rather than merely an unintended side effect . . . .").  The FAC therefore defectively pleads Logan's DMCA claim under § 1202(b)(1).

The FAC fails to plead Logan's DMCA claim under § 1202(b)(3) for the same reason; embedding Logan's photos from Wikimedia does not itself establish that Meta "kn[ew] that copyright management information ha[d] been removed or altered." § 1202(b)(3).  Nor does the FAC successfully plead that Meta knew that third parties embedding Logan's work from his Facebook account removed any accompanying CMI: third parties embed "hundreds of thousands or even millions of registered copyrighted works" using Facebook's embed tool, and "[m]ore than 2 billion people use Facebook every month."  FAC ¶¶ 53, 61.  These facts do not plausibly plead that Meta knew third parties removed Logan's CMI by embedding his photos onto other websites.

Therefore, the Court dismisses Logan's DMCA claim with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Meta's Motion to Dismiss, with leave to amend within 21 days of the Court's order.

**IT IS SO ORDERED.**

Dated: October 25, 2022

CHARLES R. BREYER
United States District Judge