JOSEPH C. GRATZ (CA SBN 240676)
jgratz@mofo.com
ANNIE A. LEE (CA SBN 328802)
alee@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone:   (415) 268-7000
Facsimile:   (415) 268-7522

ALLYSON R. BENNETT (CA SBN 302090)
abennett@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone:   (213) 892-5200
Facsimile:   (213) 892-5454

Attorneys for Defendant
META PLATFORMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DON RAMEY LOGAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., f/k/a FACEBOOK, INC.,<br><br>Defendant. | Case No.   3:22-cv-01847-CRB<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   March 3, 2023<br>Time:   10:00 A.M.<br>Ctrm:   6, 17th Floor<br>Judge:   Honorable Charles R. Breyer |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on March 3, 2023, at 10:00 a.m., or at a time and date set by the Court, Defendant Meta Platforms, Inc. ("Meta"), by and through counsel, will and hereby does move the Court to dismiss the Second Amended Class Action Complaint for Copyright and DMCA Violations for failure to state a claim upon which relief can be granted. Meta makes this Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure and bases it on this Notice of Motion and Motion, the Memorandum of Points and Authorities included herewith, the Declaration of Annie A. Lee, and Exhibits thereto, the Proposed Order submitted herewith, all pleadings and papers on file in this action, and such further evidence that may be submitted to the Court or before the hearing.

**RELIEF REQUESTED**

Meta respectfully requests that the Court grant this motion and enter the attached proposed order.

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................... 1

II. LEGAL STANDARDS............................................................................................................. 2

III. PROCEDURAL BACKGROUND............................................................................................ 3

IV. FACTUAL BACKGROUND ................................................................................................... 4

V. ARGUMENT ............................................................................................................................ 4

    A. Plaintiff's Direct Copyright Infringement Claims Regarding Unregistered Photographs Should Be Dismissed with Prejudice ................................................. 4

    B. Plaintiff's Secondary Liability Copyright Claims Should Be Dismissed with Prejudice ................................................................................................................. 5

        1. The basis of the third-party direct infringement underlying Logan's secondary liability claims remains unclear. ................................................. 5

        2. Even assuming the SAC alleges direct infringement with sufficient clarity, the SAC does not appear to allege any unlicensed use of the works. ................................................................................................................. 8

    C. Plaintiff's Lanham Act Claims Should Be Dismissed with Prejudice .................... 9

        1. Plaintiff's claim of false advertising for resizing and reconfiguring Plaintiff's photographs should be dismissed............................................... 9

        2. Plaintiff's new claim under Section 1125(d)(1)(B) should be dismissed. ............................................................................................................... 12

    D. Plaintiff's Section 1202(b) Claims Have Not Changed Materially and Should Be Dismissed with Prejudice ................................................................... 13

VI. CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
   465 F.3d 946 (9th Cir. 2006)..................................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................... 2, 13

*Bauer v. Tacy Goss, P.S.*,
   No. C 12-00876 JSW, 2012 WL 2838834 (N.D. Cal. July 10, 2012) ......................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................2

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
   911 F.2d 242 (9th Cir. 1990)..................................................................................................10

*Ferdik v. Bonzelet*,
   963 F.2d 1258 (9th Cir. 1992)........................................................................................... 7, 13

*Fisher v. Nissel*,
   No. CV 21-5839-CBM-(KSX), 2022 WL 16961479 (C.D. Cal. Aug. 15, 2022)................ 5 n.1

*Ginegar LLC v. Slack Techs., Inc.*,
   No. 22-cv-00044-WHO, 2022 WL 6837723 (N.D. Cal. Oct. 11, 2022)......................... 2, 5, 14

*Ivey v. Bd. of Regents*,
   673 F.2d 266 (9th Cir. 1982)....................................................................................................7

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)..................................................................................... 5 n.1, 7 n.3

*Louisiana-Pac. Corp. v. James Hardie Bldg. Products, Inc.*,
   928 F.3d 514 (6th Cir., 2019).................................................................................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007)..................................................................................................5

*Prager Univ. v. Google LLC*,
   No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal., Mar. 26, 2018), *aff'd*,
   *Prager Univ. v. Google, LLC*, 951 F.3d 991 (9th Cir. 2020)..................................................10

*Rice v. Fox Broad, Co.*,
   330 F.3d 1170 (9th Cir. 2003)................................................................................................11

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ............................................................................................... 2

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ............................................................................................. 10

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ............................................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................... 5 n.1

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................................... 5 n.1, 7 n.3

*Wysong Corp. v. APN, Inc.*,
   889 F.3d 267 (6th Cir. 2018) ............................................................................................... 11

*Zinus Inc. v. Simmons Bedding Co.*,
   No. C 07-3012 PVT, 2007 WL 4287391 (N.D. Cal. Dec. 6, 2007) ................................... 12

**Statutes**

15 U.S.C. § 1125(a) ................................................................................................................. 3, 12

15 U.S.C. § 1125(a)(1)(B) ......................................................................................................... 9, 12

15 U.S.C. § 1125(d)(1)(A)(ii) ......................................................................................................... 13

17 U.S.C. § 101 ............................................................................................................................ 12

17 U.S.C. § 106A(a)(3)(A) ............................................................................................................ 12

17 U.S.C. §§ 1202(a), (b) ............................................................................................................... 3

17 U.S.C. § 1202(b) ......................................................................................................... 2, 3, 13, 14

**Other Authorities**

Federal Rule of Civil Procedure 15(a) ............................................................................................ 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     INTRODUCTION

Plaintiff Logan now makes a third attempt to state a plausible claim for relief. In the Second Amended Complaint (SAC), he cuts loose several of the previously dismissed claims, including his secondary liability claim regarding embedding and Lanham Act claim alleging a misrepresentation of authorship, in favor of new ones. Plaintiff's pivot, however, does not save his claims. Other than the direct infringement claims alleging that Meta infringed works that were actually part of the alleged copyright registration, all other claims should be dismissed.

First, Plaintiff's secondary liability claims fail because the SAC still does not allege a plausible claim of underlying direct infringement by a third party for which Meta could be liable. The SAC gestures at Meta's check-in and prefetching functions, and the fact that they somehow result in the saving of Logan's photographs to some third-party location beyond Meta's servers. But the factual allegations are confusing to the point where it is impossible for Meta to determine what Plaintiff is alleging as the act of direct infringement. Even assuming that Plaintiff's vague allegations about checking-in and prefetching are adequate, Plaintiff does not allege any third-party use of Logan's photographs that is not licensed. To the contrary, the SAC affirmatively alleges that each of Logan's asserted photographs is licensed under the Creative Commons Attribution-ShareAlike 4.0 license, which only requires attribution if the licensed work is *shared with the public*—a fact the SAC never alleges. And the affirmative allegations that the photos are merely cached temporarily strongly suggest otherwise.

Second, Plaintiff abandons his Lanham Act claim of misrepresentation of authorship. Instead, he now attempts to shoehorn the allegations that Meta cropped and resized Logan's photos into Section 1125(a)(1)(B)'s requirement that the accused false advertisement must misrepresent the "nature, characteristics, and qualities" of the work. There is a reason Plaintiff did not make this argument in the first instance. Merely "resizing and reconfiguring" photos for use in Facebook's check-in feature does not come close to a plausible claim of false advertising. Specifically, the SAC does not adequately plead that the minor image modifications alleged constitute a false statement of fact, that the images as allegedly used in Facebook's check-in

1  feature deceived or have the tendency to deceive Facebook users, or that the deception is material
2  and likely to influence users' purchasing decisions with respect to Logan's original works.
3        Finally, the bases for Logan's Section 1202(b) claim have not changed in any material
4  way, and so should be dismissed for the same reasons it was dismissed from the FAC, this time
5  with prejudice.
6        It has been nearly one year since Plaintiff filed his original complaint, and Plaintiff still
7  fails to plead plausible claims of secondary copyright infringement liability, false advertising, and
8  removal of copyright management information. Except for Plaintiff's claims alleging that Meta
9  directly infringed works identified in the SAC and registered as part of the single alleged group
10 copyright registration, the SAC should be dismissed in its entirety with prejudice.

11     **II.    LEGAL STANDARDS**

12       To survive a motion to dismiss, Plaintiff must allege "enough facts to state a claim to
13 relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
14 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
15 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.
16 Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept Plaintiff's well-pleaded factual
17 allegations as true, it need not accept legal conclusions or "[t]hreadbare recitals of the elements of
18 a cause of action, supported by mere conclusory statements . . . ." *Id*.
19       Although Federal Rule of Civil Procedure 15(a) is "very liberal . . . . a district court need
20 not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in
21 bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v.
22 Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted). "A district court's
23 discretion to deny leave to amend is particularly broad where the plaintiff has previously
24 amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation
25 marks omitted) (citations omitted). Where a court has granted a motion to dismiss on the same
26 grounds twice, dismissal without leave to amend is proper. *See, e.g.*, *Ginegar LLC v. Slack
27 Techs., Inc.*, No. 22-cv-00044-WHO, 2022 WL 6837723, at *1 (N.D. Cal. Oct. 11, 2022) ("And
28 because I previously granted a motion to dismiss this ground, dismissal is without leave to

amend.").

### III. PROCEDURAL BACKGROUND

Logan filed the Complaint on February 16, 2022, in the Southern District of New York, alleging direct and secondary copyright infringement by Facebook's embedding function, and violation of the DMCA under 17 U.S.C. § 1202(b). (Dkt. 1.) The parties stipulated to transfer the action to this District, and the case was reassigned to this Court and related to *Hunley v. Instagram, LLC*, 3:21-cv-03778-CRB on April 5, 2022. (Dkt. 14.) On May 16, 2022, Logan filed the First Amended Complaint (FAC), this time expanding his claims to include direct copyright infringement, secondary copyright infringement, Lanham Act false advertising under 15 U.S.C. § 1125(a), and violation of the DMCA under 17 U.S.C. §§ 1202(a), (b). (Dkt. 18.)

Logan's FAC was dismissed in its entirety with leave to amend. (Dkt. 31 ("MTD Order").) This Court dismissed Logan's secondary liability copyright claims for the same reasons it dismissed Plaintiff's original and amended complaints in *Hunley*: because Logan accused the technical process of embedding photos and videos from Facebook onto third-party websites, but failed to plead that any third party saved Logan's photos onto their *own* servers during the embedding process, a requisite element of the alleged underlying third-party direct infringement. MTD Order at 6–7. With respect to direct copyright liability, this Court "generously constru[ed]" Logan's direct infringement claims to allege that some of Logan's photos were saved from Wikimedia onto Facebook's own servers. MTD Order at 9. The Court nevertheless dismissed Logan's direct infringement claims because Logan failed to plead that he had registered the allegedly infringed photographs with the Copyright Office. MTD Order at 8–9. The Court dismissed Logan's false advertising claim alleging a misrepresentation of authorship under Supreme Court and Ninth Circuit precedent. MTD Order at 10–13. And finally, the Court dismissed both of Logan's Section 1202 claims. The Court dismissed Logan's Section 1202(a) claims because it found Meta's copyright tag at the bottom of each Facebook user page did not qualify as false CMI "conveyed in connection with" Logan's photos. MTD Order at 13–14. And the Court dismissed Logan's Section 1202(b) claims because the FAC lacked plausible allegations that would satisfy Section 1202(b)'s "double scienter" requirement. MTD Order at

14–17. On December 6, 2022, Plaintiff filed a second amended complaint (SAC) (Dkt. 35).

## IV.   FACTUAL BACKGROUND

Plaintiff Don Logan is a photographer who photographs geographical locations. SAC ¶ 9, 64. Logan registered 258 photographs with the U.S. Copyright Office under the group registration number VA0002216634. SAC ¶ 9. Logan maintains an account on Wikicommons and has published some of his work on that website under the Creative Commons License on Wikicommons. SAC ¶ 4. On each of his photos, Logan includes a statement stating that his work is licensed under a Creative Commons Attribution-ShareAlike 4.0 license. SAC ¶ 60. A Creative Commons license is irrevocable. It allows for free sharing and adaptation of the photograph for any purpose, including commercial use, subject to the license's few conditions, including requiring attribution for certain uses. SAC ¶ 54.

Logan alleges that Meta has saved Logan's works onto its own servers and uses those photographs in Facebook's "check-in" and prefetching functions. SAC ¶ 64. Pre-fetching, as alleged, refers to when Facebook "itself will 'cache' content (including Logan's CPP) on the Third Parties device . . . for a short amount of time." SAC ¶ 48. Logan alleges that when third parties use the "check-in" tool on Facebook, Logan's photographs are displayed from time to time as relevant to the "check-in" location. SAC ¶ 66. Logan then alleges that when a third party clicks or "pass[es] the mouse over" Logan's photographs, Logan's work "will appear on that Third Party's page/site and be cached on the Third Parties' storage via Facebook's prefetching tool . . . ." SAC ¶¶ 50, 66.

## V.   ARGUMENT

### A.   Plaintiff's Direct Copyright Infringement Claims Regarding Unregistered Photographs Should Be Dismissed with Prejudice

Plaintiff alleges that he owns copyrighted works that are registered under U.S. copyright number VA0002216634, a group registration of 258 photographs. SAC ¶ 9. But, upon closer inspection, that registration does not include many of the photographs asserted in the SAC. Specifically, at least the photographs of San Clemente, Costa Mesa, Terminal Island, Montego Bay, Rancho Santa Margarita, Deerfield Beach, Ventura, Three Arch Bay, and Trabuco Canyon

are not listed in the record in the Copyright Office's Public Catalog.  *See* Exhibit A, Lee Decl. (listing the names of the registered photographs).[1]  Thus, as it did with the FAC, the Court should dismiss Plaintiff's direct infringement claims with respect to works for which Plaintiff has not alleged registration, this time without leave to amend.  *See* MTD Order at 9–10 (dismissing direct infringement claims for failure to plead registration) (citing *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019)); *Ginegar*, 2022 WL 6837723, at *1 (dismissing claim with prejudice where the Court had dismissed it on the same grounds before).

### B. Plaintiff's Secondary Liability Copyright Claims Should Be Dismissed with Prejudice

#### 1. The basis of the third-party direct infringement underlying Logan's secondary liability claims remains unclear.

As discussed in Meta's first motion to dismiss, secondary liability must be predicated on a plausible claim of direct infringement by a third party.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").  Here, Plaintiff is alleging that the direct infringers are third parties who cached, saved, and/or downloaded Logan's photographs from Meta's servers.  Accordingly, if those third parties cannot be held *directly* liable for copyright infringement, then Meta cannot be held *secondarily* liable for their actions.

Logan's allegations regarding the supposed third-party direct infringement remain

---

[1] As the Court recognized in its order dismissing Plaintiff's FAC, in reviewing a motion to dismiss, "[a] court may . . . consider . . . documents incorporated by reference in the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  Documents are subject to incorporation by reference if the plaintiff refers to them "extensively," or they form the basis of the complaint.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  The SAC alleges, "To file suit for infringement, the copyright interest must be registered with the U.S.C. [sic] Copyright Office," and "Logan's CPP have been registered under VA 000216634."  SAC ¶¶ 17, 20.  Because Logan's copyright registrations form the basis of the SAC, the Court can properly consider them as incorporated by reference.  The Court may also take judicial notice of the printout from the Copyright Office's Public Records Catalog.  *See Fisher v. Nissel*, No. CV 21-5839-CBM-(KSX), 2022 WL 16961479, at *3–*4 (C.D. Cal. Aug. 15, 2022) (taking judicial notice of printouts from the Copyright Office's Public Records Catalog online "because they are matters of public record") (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

unclear.[2]  In particular, the SAC does not clearly allege *where* Logan's photographs are supposedly downloaded to and *what* happens to the photograph after the alleged downloading.

For instance, Paragraph 1 alleges that Meta made Logan's photographs available to "other Facebook users ('Third Parties') who cached Logan's alleged Copyright Protected Photos ("CPP") on their *hard drives* or saved same on their *server* through a FB tool called 'prefetching' defined later herein."  SAC ¶ 1 (emphasis added).  Immediately after, Paragraph 2 alleges that Facebook's check-in tool involves Facebook's practice of "downloading Logan's CPP" onto "Third Party users' *storage sites* (in an altered form)," and paragraph 8 alleges that Logan's photographs have been "downloaded to *Third Party users site* via Facebook's checking in and/or prefetching tools process . . . ."  SAC ¶ 2, 8 (emphases added).  Paragraph 33 alleges that Plaintiffs used a "ping test" to investigate saving of Logan's photographs onto third-party users' "*hard drives and/or servers*."  SAC ¶ 33 (emphasis added).  But then paragraph 48 alleges that Meta "cache[s]" Logan's photographs "on the *Third Parties device*."  SAC ¶ 48 (emphasis added).  And paragraph 50 alleges that Facebook "knows that when Third Parties click on the check-in function and/or 'pass the mouse over' the Logan CPP, Facebook knows that the Third Party accessed the CPP which Facebook cached on the *Third Parties' storage*. . . ."  SAC ¶ 50 (emphasis added).  Though at first glance the differences between those technical terms may seem insignificant, a "site" is very different from a "hard drive," which is very different from a "server," which is very different from a user's "device."  The SAC also does not explain or define what it means by a Third-Party user's "storage site" or "users site."  Without clear allegations of *where* and *how* third parties are allegedly storing Logan's photographs, it is impossible for Meta

---

[2] We understand Plaintiff is no longer alleging secondary copyright liability premised on third-party use of Facebook's embedding function, that is, embedding content from Facebook to third-party websites without saving the content on third-party servers.  *Compare* FAC ¶ 33 with SAC ¶ 36 (SAC no longer alleging embedding as "the act of a technical web coder adding a specific 'embed' code to the HTML instructions that incorporates a photograph or video, hosted in this case on Facebook's server, to be displayed on a third-party webpage that the third-party controls with regard to the other text, photos or videos around the embedded work.").  To the extent Plaintiff is attempting to maintain its embedding claims via the several statements—old and new—regarding "embedding," Meta moves to dismiss those claims on the same grounds as in the FAC, this time with prejudice.  MTD Order at 6–7 (dismissing secondary liability copyright claims for embedding under the Server Test).

to determine what specific act of direct infringement Plaintiff's claims are directed to.

Moreover, the SAC appears to use the terms "prefetching" and "caching" interchangeably to refer to temporary saving of Logan's CPP through use of the check-in tool, but documents that Plaintiff attached to the SAC show that the prefetching function Plaintiff accuses appears to have nothing to do with the check-in function, despite Plaintiff's allegations that they are related. *See* SAC ¶¶ 46–50 (alleging that Logan's CPP is cached via prefetching when a user "accesse[s] Logan's CPP through Facebook's check-in tool"). The SAC points to Exhibit A as "defin[ing]" the meaning of prefetching. SAC ¶ 1.[3] But Exhibit A describes prefetching as a tool whereby Facebook "prefetches" *a third-party website* (i.e., not Facebook's website) onto the user's device where Facebook has predicted that the user is likely to tap a link to that website. Exhibit A (dkt. 35-1), SAC ¶ 1. In other words, prefetching is done to facilitate a user's navigation to a third-party website, for instance, if they click on an ad. Exhibit A does not mention the check-in feature, nor caching of *Facebook content* onto the user's device. Thus, Plaintiff's allegations that third-party users cached or saved Logan's photographs from Facebook via prefetching make no sense and need not be taken as true. *Bauer v. Tacy Goss, P.S.*, No. C 12-00876 JSW, 2012 WL 2838834, at *3 (N.D. Cal. July 10, 2012) ("Because Plaintiffs have not offered a credible explanation for their contradiction, the Court need not accept their amended allegations as true.").

For these reasons, Meta still does not understand what third-party direct infringement Meta is alleged to have contributed to. This justifies dismissal again, this time without leave to amend. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (vague allegations are not sufficient to withstand a motion to dismiss); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (the district court's discretion to deny leave to amend is particularly broad where it has afforded plaintiff one or more opportunities to amend).

---

[3] Because Exhibit A is attached to the SAC and forms the basis of the SAC, the Court can properly consider it as incorporated by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

META'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 4:22-CV-01847-CRB
SF-5264262

7

### 2. Even assuming the SAC alleges direct infringement with sufficient clarity, the SAC does not appear to allege any unlicensed use of the works.

Even assuming Plaintiff alleged an underlying act of direct infringement, the SAC still fails to plead any use or reproduction of Logan's photographs that is unlicensed.

The SAC affirmatively alleges that each of Logan's asserted photographs is licensed under a Creative Commons Attribution-ShareAlike 4.0 license. SAC ¶ 60. Under the provisions of that license, someone who "Share[s]" the licensed material must follow the attribution requirements of the license, for example, by retaining certain information about the creator and a copyright notice, and indicating if the material was modified. Exhibit B, Lee Decl.[4] "Share" is a defined term in the license, which means "to provide material *to the public* by any means or process that requires permission under the Licensed Rights . . . and to make material *available to the public* including in ways that members of the public may access the material from a place and at a time individually chosen by them." *Id.* (emphasis added).

Crucially, the SAC does *not* allege that any third party provides or makes Plaintiff's copyrighted photos available to the public. As discussed above, the SAC alleges that Logan's photos are saved, downloaded, and/or cached to various third-party locations. But even assuming those acts violate Logan's exclusive rights, the SAC does not allege that the third parties make those copies available to the public. The closest Plaintiff gets is in paragraph 2, where he alleges that Facebook's check-in tool involves Facebook's practice of downloading Logan's photographs onto Third Party users' storage sites "to facilitate further misappropriation of Logan's CPP by other Facebook users." SAC ¶ 2. But the SAC does not specify what "further misappropriation" is alleged. Nor does the SAC allege whether the misappropriation involves making Logan's CPP available to the public. In fact, the affirmative allegations that Logan's photographs are only "cached" to third party locations strongly suggests that the photographs are never transmitted or

---

[4] The SAC alleges that each of Logan's copyrighted images is licensed under the Creative Commons Attribution-ShareAlike 4.0 license, SAC ¶ 60, and that Meta violated Logan's exclusive rights because it is not a licensee under Logan's Creative Commons license. SAC ¶ 58. Because the Creative Commons Attribution-ShareAlike 4.0 license forms the basis of the SAC, the Court can properly consider it as incorporated by reference.

displayed to others because they remain in those third-party locations only temporarily. *See* SAC ¶ 48 (describing prefetching as caching data "locally on the person's [Third Parties] [sic] device for a short amount of time").

In other words, if the SAC is alleging that Meta can be secondarily liable for users who directly infringe by saving copies of Logan's photographs to third-party locations, those copies would be licensed under the alleged Creative Commons license, and there would be no actionable underlying direct infringement. Plaintiff's secondary liability copyright claims should thus be dismissed.

### C. Plaintiff's Lanham Act Claims Should Be Dismissed with Prejudice

#### 1. Plaintiff's claim of false advertising for resizing and reconfiguring Plaintiff's photographs should be dismissed.

Plaintiff now alleges that Meta committed false advertising under the 15 U.S.C. § 1125(a)(1)(B) because it "resized [and] reconfigured" Logan's photos, and "thus altered the nature, contents, and characteristics of the [photos]." SAC ¶ 3.[5] Re-sizing and cropping a photo, however, does not give rise to an actionable false advertising claim under Section 1125(a)(1)(B).

Section 1125(a)(1)(B) forbids a person from making any false or misleading statements of fact "in commercial advertising or promotion" that "misrepresent[] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To establish a claim for false advertising, a plaintiff must plausibly allege "(1) false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence

---

[5] As with Plaintiff's embedding allegations, the SAC retains the allegation that "removal of Logan's identifying information constitutes a false or misleading representation of fact regarding the creation and ownership of the images." SAC ¶ 85. The SAC, however, does not add any factual allegations that would affect the Court's reasoning in its order dismissing Plaintiff's misrepresentation of authorship claims in the FAC. To the extent Plaintiff attempts to maintain his misrepresentation of authorship claims, including via the new allegations that Meta "oblierat[ed] his signature from the face of his CPP works," those claims should be dismissed for the same reasons as in the FAC without leave to amend. *See* MTD Order at 12–13 (dismissing Plaintiff's misrepresentation of authorship claims under *Dastar* and *Sybersound*).

META'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 4:22-CV-01847-CRB
SF-5264262

9

the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *9 (N.D. Cal., Mar. 26, 2018), *aff'd*, *Prager Univ. v. Google, LLC*, 951 F.3d 991 (9th Cir. 2020) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). A false advertising cause of action is not limited to "literal falsehoods." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). But a false advertising claim based on implied statements "must be both specific and communicated as to 'deceive[] a significant portion of the recipients.'" *Prager Univ.*, 951 F.3d at 1000. Even taking Plaintiff's allegations of resizing and reconfiguring as true, Logan's SAC fails to plead several elements of the false advertising claim.

First, Logan fails to plead a false statement of fact. "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citation omitted). Logan's SAC simply repeats the allegation that Meta "resized and/or cropped and/or edited" Logan's photographs "thus changing and/or misrepresenting the nature, characteristics and qualities of the CPP." *See, e.g.*, SAC ¶ 26. The SAC does not shed any more light on that conclusory allegation. It does not state what the alleged statement of fact is. Nor could it. In the alleged context of the check-in feature, the use of a thumbnail version of a photo—which a reasonable user would understand is simply a smaller version of a photo—cannot reasonably be said to be making any statements about the original photograph.

The SAC also does not allege how the statement of fact—whatever it is—could be allegedly false. For example, it does not allege that the content of the images is modified in any way that changes what the image represents, *i.e.*, the location photographed. Nor does the SAC plead that the image implies something specifically false as to the nature, characteristics, and qualities of the original image. Even if Plaintiff is claiming that the "resizing" and "cropping" is somehow a statement about the size or shape of the original photograph—which is not alleged in

the SAC—courts hold that such a minor image modification, without more, does not constitute a false statement of fact for purposes of the Lanham Act. *See Louisiana-Pac. Corp. v. James Hardie Bldg. Products, Inc.*, 928 F.3d 514, 518 (6th Cir., 2019) ("Here, neither party contests that the photograph depicts a real hole in Louisiana-Pacific's siding. . . . Thus, though its digital enhancements might, colloquially speaking, render the image 'false,' they are not the sort of literal falsity the Lanham Act targets.") (footnote omitted).

Second, the SAC fails to plead that the alleged use of Logan's photograph in Facebook's check-in feature deceived or has the tendency to deceive viewers as to the nature, characteristics, or qualities of the original photograph. In *Louisiana-Pacific v. James Hardie*, the Sixth Circuit considered a false advertising claim alleging that a competitor had altered an image of damage to their wood siding that sharpened the colors, darkened the interior of the hole to make it appear deeper, and then superimposed a woodpecker into the hole, to show that the competitor's wood siding is vulnerable to damage by pests. The Court affirmed denial of motion for preliminary injunction, finding that even where the image was clearly altered to exaggerate the damage to the product, reasonable consumers would not be misled by a digitally altered photo in competitive advertising. *Louisiana-Pacific Corp.* 928 F.3d at 517–18. Here, the image was altered even less than in *Louisiana-Pacific*, and a reasonable Facebook user would readily understand that the small thumbnail-sized image is not the original photograph. Indeed, it is common sense that thumbnails are cropped versions of the original photograph. And the SAC does not plead factual allegations to the contrary that would make it plausible that Facebook users would believe the original photographs are actually of the shape and size shown on Facebook. *See Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 272 (6th Cir. 2018) ("Common sense dictates that reasonable consumers are unlikely to expect that dog food is made from the same meat that people eat. Wysong's complaints did not plead enough facts or provide enough context to make a plausible case to the contrary.").

Third, Plaintiff fails to plead that the alleged "resizing and reconfiguring" is material. The test for materiality is whether the deception "is likely to influence the purchasing decision." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (quotations omitted). The SAC does not

contain *any* factual allegations that the alleged use of a smaller version of Logan's photographs in Facebook's check-in feature affects "purchasing decisions."  For instance, it does not allege that users go to Facebook for the purpose of viewing or downloading Logan's photographs.  Nor does it allege that users forego purchasing Logan's photographs or viewing them on Wikimedia because they can view smaller versions on Facebook—which, to be clear, still would not be enough to survive a motion to dismiss.  *Zinus Inc. v. Simmons Bedding Co.*, No. C 07-3012 PVT, 2007 WL 4287391, at *5 (N.D. Cal. Dec. 6, 2007) ("Pleading that the cease-and-desist letters may influence Wal–Mart to refrain from purchasing Zinus' product is not sufficient").  Indeed, it stretches the imagination to believe, and the SAC does not plead, that a user would use Meta's check-in feature just to look at Logan's photographs instead of seeking out the original photograph *because* it was resized to be smaller.

Indeed, there *is* a cause of action under the Visual Artists Rights Act that allows artists "to prevent any intentional distortion, mutilation, or other modification of [their] work which would be prejudicial to his or her honor or reputation." 17 U.S.C. § 106A(a)(3)(A).  But the very narrowness of that statute highlights how great a reach Logan's false advertising claim makes: that statute is available only with respect to a narrow definition of "works of visual art" that expressly excludes "any . . . electronic publication" such as Plaintiff's photograph.  17 U.S.C. § 101.

Under any interpretation of the factual allegations, the alleged use of Logan's photographs in the check-in function is a far cry from the false advertising by a competitor proscribed by the Lanham Act, and Plaintiff's claims under Section 1125(a)(1)(B) should be dismissed.

### 2. Plaintiff's new claim under Section 1125(d)(1)(B) should be dismissed.

Finally, in a section titled "Lanham Act False Advertising Under 15 U.S.C. § 1125(a)," Plaintiff adds a new claim of violation of Section 1125(d)(1)(B)[6] for "representations of fact

---

[6] Paragraph 89 refers to section "1125(B)(1)(B)," but there is no such numbered provision of the Lanham Act.  Meta interprets the complaint to refer to Section 1125(d)(1)(B), the only provision in that section to mention diversion of sales and goodwill.  If Plaintiff contends the SAC is

1  through the diversion of sales or loss of goodwill." SAC ¶ 89.  Section 1125(d)(1)(A) provides a

2  cause of action against a person who, with bad-faith intent to profit from a mark, "registers,

3  traffics in, or uses" a particular domain name that is identical or confusingly similar to that mark.

4  15 U.S.C. § 1125(d)(1)(A)(ii).  Section 1125(d)(1)(B) lays out the factors a court may consider in

5  determining bad-faith intent.  Here, Plaintiff's claim that Meta has violated Section 1125(d)(1)(B)

6  is unsupported by any factual allegations.  The SAC does not allege that Meta used a domain

7  name identical to or confusingly similar to a mark owned by Logan; indeed, it does not use the

8  term "domain name" at all.  Such a threadbare recitation of the cause of action without any

9  accompanying factual allegations, warrants dismissal.  *See Ashcroft*, 556 U.S. at 678.

Plaintiff should not be permitted to burden the Court with yet another set of theories of false advertising.  Plaintiff's Lanham Act claims should thus be dismissed in their entirety, this time without leave to amend.  *Ferdik*, 963 F.2d at 1261 (the district court's discretion to deny leave to amend is particularly broad where it has afforded plaintiff one or more opportunities to amend).

### D.  Plaintiff's Section 1202(b) Claims Have Not Changed Materially and Should Be Dismissed with Prejudice

The SAC abandons Logan's dismissed 1202(a) claims alleging false CMI but maintains the 1202(b) claims alleging intentional removal or alteration of CMI.  Plaintiff's Section 1202(b) claims should be dismissed because the SAC still does not adequately plead Section 1202(b)'s "double scienter" requirement.  Except for just two minor additions, Plaintiff's Section 1202(b) claims remain untouched from the FAC.

First, the SAC adds the statement "Defendant knew of Logan's CMI because it took Logan's CPP from Wiki-Commons of which it is well known licenses works, including the CPP, under CPP licenses which are visible and conveyed in connection with the works, including the CPP." SAC ¶ 119.  But conclusory allegations cannot be saved by adding more conclusory

---

referring to a different provision, he should be required to state so clearly in the operative complaint.

1 allegations. The FAC already alleged that Meta downloaded Plaintiff's photographs from Wiki-Commons, and that the photographs were displayed on a website page with a link to a Creative Commons license. *See* FAC ¶¶ 3, 30. And the FAC already alleged, in conclusory fashion, that Meta knew of Logan's CMI. *See* FAC ¶ 126. Logan's repetition of allegations substantially similar to those that have already been held insufficient cannot save his claim. *See* MTD Order at 14–17 (dismissing Section 1202(b) claims for failing to meet the "double scienter" requirement).

Second, the SAC also includes two images of Santa Margarita as an "Example of CMI Removal": one larger version labeled "Original" and one smaller thumbnail version labeled "Facebook modified with no CMI." SAC ¶ 65. The larger version appears to show Logan's signature in the bottom left corner. *See id.* Though the FAC did not include any photos with Logan's signature, the inclusion of this single photo with Logan's signature—none of the other photos in the SAC contain Logan's signature—does not affect the Court's conclusion that Plaintiff did not adequately plead Section 1202(b)'s "double scienter" requirement. Pleading automatic omission of CMI by taking a photo out of the full context of the webpage where the CMI is found and creating a thumbnail is insufficient to plead scienter. *See* MTD Order at 16–17 (citing *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd in part and rev'd in part on other grounds*, 280 F.3d 934 (9th Cir. 2002) ("[R]emov[ing] Plaintiff's images from the context of Plaintiff's Web sites where their [CMI] was located, and convert[ing] them to thumbnails in Defendant's index . . . [failed to show[] [that] Defendant's actions were intentional, rather than merely an unintended side effect . . . .") (alterations in original)). *See also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018) (holding the first scienter requirement was not satisfied where information was automatically lost when images were resized because a plaintiff "must offer more than a bare assertion that 'when CMI metadata is removed, copyright infringement plaintiffs . . . lose an important method of identifying a photo as infringing.'").

Plaintiff's Section 1202(b) claims should be dismissed in their entirety without leave to amend. *See Ginegar*, 2022 WL 6837723, at *1 (dismissing claim with prejudice where the Court had dismissed it on the same grounds before).

## VI. CONCLUSION

For the foregoing reasons, Meta respectfully requests the Court dismiss all claims in Plaintiff's Second Amended Complaint, except Plaintiff's claims that Meta directly infringes the works identified in the SAC and registered under U.S. copyright number VA0002216634, with prejudice.

Dated: January 17, 2023

MORRISON & FOERSTER LLP

By: */s/ Joseph C. Gratz*
        JOSEPH C. GRATZ

Attorneys for Defendant
META PLATFORMS, INC.