IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON RAMEY LOGAN, <br>     Plaintiff, <br> v. <br> META PLATFORMS, INC., <br>     Defendant. | Case No. 22-cv-01847-CRB <br><br> **ORDER GRANTING MOTION TO DISMISS** |

After the Court dismissed his claims in its first order, Plaintiff Don Ramey Logan ("Logan") brings a second amended complaint in this action. See Logan v. Meta Platforms, Inc., No. 22-CV-01847-CRB, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ("Logan I"); SAC (dkt. 35). Logan repleads most of his claims—direct infringement, secondary infringement, Lanham Act claims, and claims under the Digital Millennium Copyright Act ("DMCA")—with a new factual basis, a convoluted combination of the "check-in" and "prefetching" functionalities on Facebook. See SAC ¶¶ 2, 6, 31, 44. Defendant Meta Platforms, Inc. ("Meta") challenges all but the direct infringement claims relating to the copyrighted images specifically identified in the second amended complaint. See Mot. (dkt. 36). Because the challenged claims fare no better under Logan's new theories, the Court vacates the hearing on the motion pursuant to Civil Local Rule 7-1(b), and GRANTS Meta's motion to dismiss without leave to amend.

**I.   BACKGROUND**

Logan is a "creator of high-quality photographs," specializing in aerial and

1  landscape photography.  See SAC ¶¶ 9, 64.  He alleges that he is the owner of the
2  copyright for 258 photographs "that have been unlawfully saved on Facebook servers
3  without his permission."  Id. ¶ 9.  Logan has published his work on Wikimedia Commons,
4  making it available under a Creative Commons license, which dictates that third parties
5  may "reproduce, publicly display, and distribute" the work, "subject to and limited by
6  certain restrictions both under the license terms and according[] to the licensor's terms,
7  including attribution of the author."  Id. ¶¶ 27–28.

### A.  Initial Allegations and First Motion to Dismiss

Logan's first amended complaint and the Court's prior order on Meta's first motion to dismiss focused on Logan's allegations related to Facebook's "embedding" tool:  Both "third parties embedding content from Facebook users' pages onto third-party websites," and "Meta embedding content from other websites onto Facebook."  Logan I, 2022 WL 14813836, at *1.  Through this embedding process, Logan alleged that Facebook (and third parties) lifted Logan's photographs from Wikimedia Commons and stripped the photos of all identifying information, including Logan's attribution, contravening the Creative Commons license that governs third party use of the photographs.  Id. at *2.

The Court held that Logan had failed to plead his secondary liability claims against Meta because he failed to "make the threshold showing that 'there has been direct infringement by third parties.'"  Id. at *4 (quoting Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1169 (9th Cir. 2007)).  Though his direct claims against Meta fared better, those too were dismissed because he failed to plead his copyright registration in the photos at issue.  Id. at *5–6.  The Court further held that Logan could not plead a Lanham Act claim when he alleged only that Facebook has "misrepresent[ed] [his] authorship" of the photographs, rather than "misrepresent[ing] the[ir] 'nature, characteristics, [or] qualities.'"  Id. at *7 (quoting 15 U.S.C. § 1125(a)(1)(B)).  Finally, the Court dismissed Logan's DMCA claims, as Meta's copyright tag at the bottom of each Facebook page did not plausibly plead false copyright management information ("CMI") under 17 U.S.C. § 1202(a), and Meta's removal of Logan's CMI from his photos did not meet 17 U.S.C.

§ 1202(b)'s "double scienter" requirement. See id. at *8–10. The Court granted Logan leave to amend each of his claims. See id. at *10.

### B. New Allegations: "Check-In" and "Prefetching"

While some of the allegations in the second amended complaint still discuss embedding,[1] Logan's new allegations center on Facebook's "check-in" and "prefetching" functionalities. While Logan's explanation of how this process works is far from clear, and little supported (and in some instances contradicted) by documentation Logan appends to the complaint,[2] Logan's allegations with respect to these tools are as follows:

First, Facebook users can "check-in" to a particular location, such as a city or town. SAC ¶ 66. When a Facebook user checks in somewhere, the user's GPS data is transmitted to Facebook, "which then displays to the user photos relevant to the location." Id. ¶ 6. When Facebook does this, Logan alleges that his photographs are "displayed from time to time as relevant to the 'check-in' location." Id. ¶ 66. Logan alleges that this process "has resulted in thousands of instances of misappropriation by Facebook and other displays of Logan's Newport Beach photo and other [photographs]." Id. ¶ 7.

Second, Facebook occasionally employs a process called "prefetching," which "allows Facebook to download mobile content before someone taps a link." SAC Ex. A. Facebook describes this process as being employed usually for mobile ads—thus, Facebook will download mobile content, at least partially, before a user taps the ad, so the ad loads more quickly. Id. As a result, the content that is "prefetched" "is cached locally

---

[1] It is unclear whether, and to what extent, Logan seeks to replead his claims based on his original embedding theory. See, e.g., SAC ¶¶ 36–42 (discussing embedding generally). Except for the direct infringement claims relating to registered photographs that Logan specifically pleads in his complaint (which Meta does not challenge in this motion), to the extent that Logan repleads his other claims pursuant to his earlier "embedding" theory, those claims are dismissed for the reasons outlined in the Court's prior order. See Logan I, 2022 WL 14813836, at *4, *6–10. Such that Logan understands his "check-in" and "prefetching" allegations to be another version of his "embedding" theory, see, e.g., SAC ¶ 43, that does not alter the Court's conclusions in this order.

[2] See SAC Ex. A. This is a document, seemingly pulled from Meta's Business Help Center, titled "Understanding Prefetching and How Facebook Uses Prefetching." Id. Because it is appended to and referenced in the complaint, it is incorporated by reference. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

on the [user's] device for a short amount of time." Id. ¶ 48 & Ex. A. Facebook notes, however, that "[i]mages on the website are not cached." Id. Ex. A. Logan alleges that this is how his photographs get transferred between Facebook and its users. See id. ¶ 48 (stating that "Facebook itself admits that [it] will 'cache' content (including Logan's [photographs]) on the [user's] device," citing the Meta Business Help Center article attached as Exhibit A). Thus, Logan alleges that both of these features—"check-in" and "prefetching"—culminate in "Facebook's practice of downloading Logan's [photographs] onto Facebook servers and Third Party users' storage sites (in an altered form) to facilitate further misappropriation of Logan's [photographs] by other Facebook users." Id. ¶ 2.

Logan seems to imagine that the following process occurs: First, Facebook has saved Logan's photographs on its servers, and altered them to appear on location pages in a different format than the original photograph (e.g., as a "thumbnail"), see id. ¶¶ 64–65; next, a Facebook user, by "checking in" to a location page that contains an altered version of Logan's photograph, or "pass[ing] the[ir] mouse over [Logan's photograph]," the user allows Facebook to transmit that altered version of Logan's photograph to the user's server or storage "for a short period of time," through prefetching, SAC ¶¶ 48, 50, Ex. A; finally, that process "allows Third Parties to use or 'embed' Logan's [photographs] onto Third Parties' own sites, web pages, servers, and/or hard drives." Id. ¶ 6.

Logan claims that, as a result of this process, Meta has incurred direct liability and secondary liability for copyright infringement and violated 15 U.S.C. § 1125(a)(1)(B) and 17 U.S.C. § 1202(b). Id. ¶¶ 84–129.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,

4

678 (2009) (cleaned up).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

The Court addresses Meta's challenged claims in the following order: First, Logan's secondary liability claim; second, Logan's Lanham Act claim; and third, Logan's DMCA claim.[3]

---

[3] Meta also challenges Logan's direct claims as they relate to any unregistered photographs (which nonetheless appear in the complaint), as well as the copyrighted photographs which do not appear in the complaint. Mot. at 4–5; Reply (dkt. 42) at 2; see also SAC ¶ 9 (stating that Logan has a group registration of 258 photographs); id. SAC ¶ 64 (listing the photographs that were allegedly infringed).
   The Court agrees.  As to the unregistered photographs, they are dismissed pursuant to the Court's prior order.  See Logan I, 2022 WL 14813836, at *5–6.  As to the photographs not specifically mentioned in the complaint, Logan only alleges that "[a]s a result of [Meta's] actions, Logan's [photographs] some of which are reproduced below were unlawfully saved by Facebook on its servers for Third Parties to access, display server [sic] or store via Facebook's 'check-in' function and prefetching . . . ." Id. ¶ 64 (emphasis added).  This allegation is far too conclusory to survive a motion to dismiss.  See Iqbal, 556 U.S. at 678.

5

### A. Secondary Liability

Because Logan has failed to plausibly plead that Meta's "prefetching" and "check-in" functionalities cause Facebook users to store Logan's photographs on their devices, he has failed to plead the direct infringement that must underlie any claim for secondary liability.

As the Court held in its prior order, "to assert secondary liability claims against Meta, Logan must make the threshold showing that 'there has been direct infringement by third parties.'" Logan I, 2022 WL 14813836, at *4 (quoting Perfect 10, 508 F.3d at 1169). Because, in the first amended complaint, Logan only alleged that users "can" save embedded photos onto their servers, he failed to plead direct infringement by Facebook users. Id.

Logan's second amended complaint fares no better. First, Logan fails to plausibly plead that the "prefetching" functionality even applies to his photographs. The only document Logan attaches to his complaint, an article from Meta's Business Help Center titled "Understanding Prefetching and How Facebook Uses Prefetching," describes prefetching as a process wherein Facebook "download[s] mobile content before someone taps a link." SAC Ex. A. But that "mobile content" is discussed in terms of third-party ads—that is, Facebook will pre-load some ad content onto a user's device when they are presented with the ad. Id. If the user clicks on the ad, then the content will load faster, because some of it was pre-loaded, or "prefetched." Id. But the document does not indicate at all that it prefetches content already on Facebook itself, such as Logan's photographs. And even if it did, the document states point-blank that "images" are not "cached," that is, are not among the content that stored to user's devices for a short amount of time. Id.

Second, as Meta points out, this document does not discuss the "check-in" feature at all, or even imply that the "prefetching" or "check-in" processes are at all linked. Mot. at 6–7. Logan seems to think they are somehow linked, that is, when a Facebook user "check[s] in" at a particular location on Facebook that has used Logan's photograph, that

6

photograph is "prefetched" onto that user's device. SAC ¶¶ 45–51.[4] For example, Logan argues that the SAC "describes in detail that Logan's [photographs] are stored on Meta servers as part of its check in and prefetch features and are then accessed and stored by Third Parties and displayed on the Third Parties' Facebook pages as 'check ins' or 'like.'" Opp'n at 4 (citing SAC ¶¶ 1, 6, 45–51). But Logan does not marshal any facts to render any such connection between "check-in" and "prefetching" plausible, and the Court need not treat such conclusory allegations as true on a motion to dismiss.

Finally, Logan lambasts Meta's "whining about confusing, or even contradictory, allegations." Opp'n at 6. Of course, no one is denying that a plaintiff may plead theories in the alternative. See Fed. R. Civ. P. 8(d)(2). But "[t]he right to plead alternatively . . . does not sanction deviations from the basic obligation to plead comprehensibly," § 1282 Alternative and Hypothetical Pleading, 5 Fed. Prac. & Proc. Civ. § 1282 (4th ed.), nor loosen the requirement to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Accordingly, Logan's secondary liability claims are dismissed. Because Logan still fails to plead any underlying direct infringement despite having been granted leave to amend to do so in the Court's prior order, this dismissal is without leave to amend.[5]

## B.  Lanham Act Claim

In the second amended complaint, Logan reasserts his Lanham Act claim under a

---

[4] In an attempt to demonstrate this link, Logan attached an exhibit to his opposition, and filed a motion to correct his opposition by attaching still more exhibits to that motion. See Opp'n (dkt. 40) Ex. A; Mot. to Amend/Correct (dkt. 43) Exs. A–B. First, the Court notes that documents appended to an opposition are typically extrinsic evidence not considered on a motion to dismiss, unless they are subject to judicial notice or otherwise incorporated by reference into the complaint. See, e.g., Khan v. SAP Labs, LLC, No. 18-CV-07490-BLF, 2019 WL 5697928, at *8 (N.D. Cal. Nov. 4, 2019). But even if the Court were to consider Logan's proffered exhibits, the conclusion would be the same: Neither his original exhibit showing the number of people who had "checked in" to Newport Beach, see Opp'n Ex. A, nor the additional exhibit showing that a thumbnail of the Newport Beach Location page appears when a user hovers their cursor over that location on those users' profile pages, see Mot. to Amend/Correct Ex. B, demonstrates that the photo is saved, cached, or "prefetched" onto that user's server, hard drive, or device.

[5] Because the Court dismisses Logan's secondary liability claim on this ground alone, it need not address Meta's alternative argument that Logan does not plead unlicensed use of his works. See Mot. at 8–9.

different theory: Instead of merely omitting his attribution, by "resizing" and "reconfiguring" his photographs into "thumbnails" for location pages on Facebook, Meta has altered the content of his photographs, an actionable misrepresentation under the Lanham Act. See Opp'n at 8–9; SAC ¶¶ 64–65; 84–91. Meta argues that Logan has failed to plead at least two required elements of a Lanham Act claim: That the false statement "actually deceived or has the tendency to deceive a substantial segment of its audience" and "the deception is material, in that it is likely to influence the [audience's] purchasing decision[s]." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); see also Mot. at 10–12.

As far as the Court is aware, this is the first case to address a Lanham Act claim regarding resizing or reconfiguring a photograph to appear as a thumbnail on a Facebook page. And there is a reason for that. Logan has pleaded no facts—nor, it appears, can he—to show that a Facebook user is likely to be deceived by a cropped, resized, or reconfigured thumbnail on a Facebook page, or that such deception, even if alleged, is material.

A Facebook user is clearly aware that photographs are cropped, resized, or reconfigured to appear as thumbnails on Facebook pages—including their own Facebook profiles.[6] Therefore, common sense dictates that a user is not likely to be deceived when such a thumbnail shows up on another Facebook page, and Logan has proffered no facts rendering such deception plausible. See Hicks v. PGA Tour, Inc., 897 F.3d 1109, 1117 (9th Cir. 2018) (citing, while affirming dismissal of a Lanham Act claim, Iqbal's instruction that courts must draw on their "judicial experience and common sense"); see also Wysong Corp. v. APN, Inc. (17-1975), 889 F.3d 267, 272 (6th Cir. 2018) (concluding that consumers were not likely to be deceived by a picture of a lamb chop on a bag of dog food that their dogs would be eating lamb chops, because "[c]ommon sense dictates that

---

[6] See, e.g., How Do I Edit My Profile Picture Thumbnail?, Facebook Help Center, https://m.facebook.com/help/www/146846195386449?_se_imp=0QYkbJR5OT67Yjz6P (last accessed May 24, 2023) ("The thumbnail version of your profile picture is the smaller version that people see next to your name.").

8

1    reasonable consumers are unlikely to expect that dog food is made from the same meat that
2    people eat").

3    Further, even if a Facebook user were deceived, it would be nonsensical to
4    conclude, without more facts, that such deception would be material. That is, if a
5    Facebook user saw one of Logan's photographs appear as a thumbnail, Logan has not
6    plausibly alleged that they would be likely to download, retain, and share the thumbnail—
7    which, as Facebook users are well aware, is designed to be small and lower quality—
8    instead of using one of the higher quality versions of Logan's photographs readily
9    available on Wikimedia Commons in a manner consistent with his Creative Commons
10   license.

11   Logan argues that by resizing and reconfiguring his photos, the images have been
12   "completely modif[ied] . . . to take on different characteristics." Opp'n at 9. This is, as far
13   as it goes, true. Logan invites the Court to "[i]magine a full length photograph reduced to
14   a portrait – would anyone ever equate the two?" Id. And that is precisely the point—a
15   claim under § 1125(a)(1)(B) requires a that the false statement "actually deceive[] or has
16   the tendency to deceive a substantial segment of its audience." Southland, 108 F.3d at
17   1139. Who would be deceived by a photo that is clearly cropped and resized to appear as a
18   Facebook thumbnail, in the same way all other thumbnails appear on all other Facebook
19   pages? What Facebook user—who has uploaded their own photos and then watched
20   Facebook crop them into thumbnails for their own profiles—would "ever equate the two?"
21   Opp'n at 9.[7]

22   Because Logan again attempts to reconfigure his copyright claim under a trademark
23   statute and fails, his Lanham Act claim is dismissed without leave to amend. Logan I,
24   2022 WL 14813836, at *6.[8]

---

[7] To the extent that Logan attempts to replead his claims under a misattribution of authorship theory—by arguing that his signature at the bottom of one of his photographs was cropped out when that photograph was made into a thumbnail—that theory was considered and rejected in the Court's prior order. See Logan I, 2022 WL 14813836, at *6–7.

[8] Logan also appears to plead a new Lanham Act claim under § 1125(d)(1)(B) for diversion of

### C. DMCA Claim

Although he drops his claim under 17 U.S.C. § 1202(a) of the DMCA, Logan repleads his claim under § 1202(b), alleging that Meta "remove[d] or alter[ed]" Logan's CMI, this time by cropping out a signature from the bottom corner of one of Logan's photos when Facebook turned the photo into a thumbnail. See SAC ¶¶ 65, 115–129.

But this additional allegation still fails to plausibly plead that Meta "intentionally remove[d] or alter[ed]" Logan's copyright information from the photograph in question. 17 U.S.C. § 1202(b)(1). Critically, every photo, when turned into a thumbnail on Facebook, is cropped to a small, uniform size. Thus, anything in the photograph outside of that space will be excluded from the thumbnail. In this case, Logan argues that, because his attribution was outside of the thumbnail's cropped square, that he has plausibly pleaded intentionality. Opp'n at 10–11. But the fact that all Facebook thumbnails are similarly cropped belies this assumption—and Logan pleads no facts that would suggest that his signature was cropped out intentionally, rather than as an "unintended side effect" of the creation of the thumbnail. Kelly v. Arriba Soft Corp., 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), aff'd in part, rev'd in part on other grounds, 336 F.3d 811 (9th Cir. 2003).

Logan's attempt to draw an analogy between this case and APL Microscopic, LLC v. Steenblock is unpersuasive. Opp'n at 10–11; APL Microscopic, LLC v. Steenblock, No. 21-55745, 2022 WL 4830687 (9th Cir. Oct. 3, 2022). In Steenblock, the plaintiff alleged that it provided original images bearing a watermark, and screenshots of the works without the watermark appeared on the defendant's social media pages. Steenblock, 2022 WL 4830687, at *2. The court thus drew the "reasonable inference" that the defendant intentionally removed the plaintiff's watermark before posting the photos. Id. But no such inference can be drawn here, where, instead of only removing Logan's signature and

---

sales and loss of goodwill, which Meta also moves to dismiss. Mot. at 12–13; SAC ¶ 89. Because Logan fails to respond to Meta's argument in his opposition, Logan has abandoned this new claim, and it too is dismissed. See, e.g., Walsh v. Nev. Dep't of Hum. Res., 471 F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . , has effectively abandoned his claim.").

10

keeping the rest of the photo intact, the photo was instead uniformly cropped to be used as a thumbnail, losing the signature in the process.  Cf. Bain v. Film Indep., Inc., No. CV 18-4126 PA (JEMX), 2018 WL 6930766, at *5 (C.D. Cal. Aug. 9, 2018) (allegations of intentional removal of a watermark from a film and then posting the film on a website for public viewing plausibly alleged a § 1202(b) claim).  The Court therefore draws the "reasonable inference" from the facts as pleaded that any removal of Logan's CMI was accidental, not intentional.

Accordingly, Logan's DMCA claim is dismissed.  Because Logan's new theories have failed to cure the deficiencies outlined in the Court's prior order, further leave to amend is not warranted.  See Leadsinger, 512 F.3d at 532.

IV.  **CONCLUSION**

For the foregoing reasons, Meta's motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

Dated: May 24, 2023



CHARLES R. BREYER
United States District Judge